**E-FILED**
Friday, 05 February, 2016  03:42:13 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

SHEILA LANGFELDT-ABBOTT,      )
     )
     Plaintiff,      )
     )
     vs.      )      Case No.  4:12-cv-4117
     )
JOHN McHUGH, SECRETARY      )
DEPARTMENT OF THE ARMY, and      )
THE DEPARTMENT OF THE ARMY,      )
AGENCY,      )
     )
     Defendant.      )

## PLAINTIFF'S MOTION IN LIMINE

Now comes your Plaintiff, Sheila Langfeldt-Abbott and hereby moves in limine to bar the defendant's from calling witnesses an introducing into evidence certain documents and in support thereof states as follows:

1.     Offers of Mediation:  Plaintiff hereby requests this court bar any evidence of settlement negotiations or discussions.  This would include introduction of defendant's exhibit number 42 which discussed an offer for mediation.  First, settlement negotiations are not admissible under Federal Rule of Evidence 408.  Defendant is identified as Exhibit 42 emails regarding a plan for a mediator.  The same is barred under Federal Rule of Evidence 408.  Moreover, defendant never offered mediation to the plaintiff to resolve her dispute and the same is irrelevant and immaterial.  Likewise, defendant has identified as Exhibit 43 a description internally of a meeting to discuss how to handle meeting with Sheila and other division chiefs and also whether mediation would be offered.  Not only is this exhibit barred by Federal Rule of Evidence 408 it is also hearsay in that it contains an email from Norbert Herrera and copied to James Coffman, Sonja Tawney and Stephen Kellog, the attorney representing the Army

Sustainment Command which constitutes hearsay under Federal Rule of Evidence 801. Further, such document was not disclosed by the defendant prior to the close of discovery on June 15, 2014. Plaintiff has attached for the court's review the defendants' exhibits to which she is moving in limine to exclude as Exhibit A.

2.      Plaintiff further moves to bar introduction of evidence Exhibit 47 a memorandum of record of Stephanie Bloom in that the same constitutes hearsay and given the date of the alleged meeting July 28, 2011, this is outside the scope of the events that are the subject of this complaint. Further, the memorandum is vague and it does not state whether Sheila Langfeldt-Abbott was in attendance of this meeting.

3.      Plaintiff moves to bar introduction into evidence the defendant's Exhibit 49 in that it again is outside of the scope of the time frame in which the complaint covers. Further, a review of the memorandum of record dated February 23, 2012 demonstrates that it is hearsay and there is a lack of foundation as to whom Mr. DeLaCruz is referring to as the person "Stephanie" is and whether Stephanie actually witnessed Sheila's alleged reactions. In full, this memorandum for record is replete with hearsay and a lack of foundation and should not be admitted into evidence.

4.      Plaintiff moves to bar introduction into evidence defendant's Exhibit 50 which is an undated statement by Jerry DeLaCruz, Jr. setting forth what plaintiff's work duties are. The same is hearsay, and there is a lack of foundation as to time frame in which DeLaCruz claimed that Sheila performed these duties. In dispute in this case is whether DeLaCruz took away duties from Sheila during the time period of August 2009 through January 2011. This undated statement is irrelevant and immaterial. Further, the defendant did not disclose this exhibit until after the close of discovery and therefore plaintiff did not have the opportunity to question the

accuracy of this document through the discovery process.  In short, the same should be barred by

for all the reasons above.

5.      Plaintiff moves to bar defendants Exhibit 51, an email relating to activities of

Sheila Langfeldt-Abbott in an undisclosed time frame other than the month May.  The same is

hearsay, there is no foundation for the year in which these events allegedly occurred and as to the

May 24 allegations it constitutes double hearsay and lack of foundation because there is no

statement from the "Omshudsman G-1" supporting what DeLaCruz has claimed in this

memorandum.  Further, defendant did not disclose this document prior to the close of discovery

and the same should be barred for all the reasons set forth above.

6.      Plaintiff moves to bar defendant's Exhibits 16 and 17 as hearsay, and further not

disclosed prior to the close of discovery.  Defendant has identified an email from a Earl E.

Adams that was allegedly sent to everyone on March 4, 2010.  Mr. Adam's is not listed as a

witness on the defendant's witness list, nor did the defendant's produce these documents,

Exhibit 16 and 17, prior to the closure of discovery in this action.  Plaintiff attaches in support

the email as Exhibit B attachment of Stacy M. Booth, paralegal to Hilary Frooman, showing the

bate stamp numbers 929 through 937 being produced for the first time on December 7, 2015,

more than a year and a half after the close of discovery on June 15, 2014.

7.      Plaintiff moves to bar defendant's Exhibit 18.  Defendant Exhibit 18 is a

memorandum Rule for Temporary Promotions.  Defendant again did not produce this document

prior to the close of discovery, they have not listed Yves J. Fontaine as a witness  and thus the

same constitutes hearsay.

8.      Plaintiff moves to bar introduction of defendant's Exhibit 32 in that the same

constitutes hearsay and the same does not correspond with the defendant's bate stamps on

3

request for production of documents.  Specifically, defendant has identified these documents as

DEF 401 to DEF 402.  Plaintiff has reviewed those documents produced by the defendant as

those numbers under those bate stamp numbers and the same constitutes testimony at the fact

finding conference contained at pages 84 and 85 of the transcript.  Exhibit C, a true and correct

copy of the DEF documents stamped 401 and 402 are attached hereto and made a part of this

motion.

     In the event that the defendant is referencing a mass email sent to employees in the Army

Sustainment Commands G-8 Division by Mr. DeLaCruz entitled Happy Thanksgiving (a copy of

which is attached) the same still constitutes hearsay and is irrelevant as to the issues relating to

this matter.  Sending a blast mass email to anybody in the Army Sustainment Command does not

prove how the defendant treated the plaintiff in this matter.

     9.    Plaintiff moves to bar the calling of witnesses Joseph Castel, Kerry Cramond, Lee

Hansen, Patricia Perrigo, Sandy Schneider as witnesses for the defendant in that the defendant

failed to disclose them in answers to pre-trial discovery and failed to list them as a witness in any

supplemental responses to discovery on or before the close of the discovery deadline of June 15,

2014.  Plaintiff attaches as support of this motion Defendant's Initial Disclosures as Exhibit D

and defendant's response to first set of interrogatories as Exhibit D.  In answering defendant's

initial disclosure the defendant's did not list individually witnesses who had discoverable

information relevant to the case, see Exhibit D.  Instead, defendant referred to the documents that

were accumulated during the course of the Equal Employment Opportunity Commission

investigation of Ms. Langfeldt-Abbott's charges, defendant's 000001 through defendant's

000869.  The only persons with knowledge disclosed in those pre-trial investigation documents

were Sheila Langfeldt-Abbott, Jerry DeLaCruz, General Yves J. Fontaine, D. Scott Welker,

4

Laura Abney, Timothy Flemming, Sonja Tawney, Allen Christiansen, Linda Riley, Stephanie Bloom, Ruth Scharfe, Ann Fennelly, Timothy Gitchel, Cara Schay, Ashley Essex, Jane Leggens, Diana Balmer, Annie Ericksen, Jennifer Schau and Timothy Allen.

10.     In addition, in reviewing the defendant's answers to interrogatories defendant only listed Jerry DeLaCruz, Lisa Peer, Stephanie Bloom and Tim Gitchel as potential persons with knowledge concerning defenses for the defendant. See Exhibit E. At no time did the defendant supplement its disclosure of potential witnesses as required under Federal Rule of Civil Procedures 26(e) and due to the failure of the defendant's to list witnesses Castel, Hansen, Perrigo, Schneider, as potential witnesses in either the initial disclosures or its answers to interrogatories defendant should be barred from calling them as witnesses as trial.

11.     Plaintiff further moves to bar the calling of Lisa Peer as a potential witness at trial in light of the fact that Ms. Peer was not assigned to the Army Sustainment Command G-8 Resource Management Division until May 2012. Ms. Peer has no personal knowledge of the facts surrounding the events that occurred from August 2009 through January 2011 and therefore cannot testify as to knowledge concerning plaintiff's alleged repeated failure to conduct herself in a professional manner in the work place. Such evidence is outside the scope of the events here and the time frame covered under the complaint the defendant has objected to its consolidation of the two cases. Therefore, Ms. Peer should be barred from testifying at trial in light of her lack of knowledge of facts during the relevant time period.

12.     With respect to Stephanie Bloom plaintiff moves to bar Ms. Bloom from testifying as to knowledge of plaintiff's repeated failure to conduct herself in a professional manner in the workplace. Defendant has not provided any foundational support for such statement from Ms. Bloom and has not supplemented its answers to any pre-trial discovery under

the pre-trial discovery requirements. Defendant in the responses to plaintiff's first request for production of documents failed to list any witness statements made, except for the report of investigation disclosed in its response to request for production. Exhibit F a true and correct copy of the defendant's responses and objections to the first request for production of documents is made a part of this motion. Plaintiff further requested that the defendant produce in request to produce number 15 each and every document which supports the defendants' denial of paragraph 7 of the complaint. Paragraph 7 of the complaint reads as follows "That Sheila at all times material to this cause of action performed her duties as a federal employee in an exemplary manner."

Defendant has not disclosed in pre-trial discovery any documents from Ms. Bloom nor any witness statements from her which would support the claim that Ms. Langfeldt-Abbott did not perform her duties in a professional and exemplary manner. In fact, defendant's reliance on a report of investigation contains only the declaration under oath statement of Stephanie Bloom from DEF 00174 through DEF 10082. Exhibit G, a true and correct copy of Ms. Bloom's statements under penalty of perjury is attached hereto and made a part of this motion. In Ms. Bloom's declaration, nowhere did she make any comments or criticisms concerning the behavior of Sheila Langfeldt-Abbott with the exception of on DEF 000182 she stated:

> "I have observed Ms. Langfeldt-Abbott come into the resource management office to go directly into Mr. DeLaCruz's office without appointment or notice to his staff support specialist and slammed the door to address him in private. This has occurred when he has been on the "telephone."

This is the only statement made by Ms. Bloom as to plaintiff's alleged lack of professional conduct. Plaintiff moves to bar Stephanie Bloom from testifying as to any incidence other than this alleged one time incident that she claimed occurred without first laying foundational testimony as to the date, time and place of occurrence, persons present and whether she provided

this information to the defendant.  To allow such testimony without disclosing the specific facts is improper and prejudicial to the plaintiff and should not be allowed until the court in limine allows inquiry as to this event.

13.   Plaintiff hereby moves to bar the defendant from making comments or statements concerning the tax aspects of any award to the plaintiff in this matter as irrelevant and speculative.

14.   Plaintiff moves in limine to prevent the defendant form informing or referring to the jury that any award made to the plaintiff will be paid by them as taxpayers of the United States.

15.   Plaintiff moves in limine to limit the factual time frame of this present case from August 2009 until January 2, 2011, the time in which Ms. Langfeldt-Abbott permanently to the Assistant to the Deputy Director of the G-8 in Resource Management.  Any testimony or evidence outside this scope has been previously barred by this court in denying the motion for leave to file the amended complaint and is the subject.

16.   Plaintiff moves to bar the defendant from introducing into evidence the fact concerning her present position in the United States Army's Defense Finance and Accounting Service in Indianapolis, Indiana, a GS-15 position in that the same is irrelevant and immaterial to the claims being presented in this action and would confuse the jury as to issues relating to this cause of action.  Defendant would attempt to introduce this into evidence as proof that the Department of Army has not taken adverse action against Ms. Langfeldt-Abbott and in fact has promoted her to a GS-15 position.  However, such information is irrelevant and immaterial to the claims being presented in this case and further it is true that the Army Sustainment Command at the Rock Island Arsenal has treated Sheila Langfeldt-Abbott in a discriminatory manner in that it

7

has refused to promote her to a GS-15 position from December 2012 through October 15, 2015 despite requests from Ms. Langfeldt-Abbott for consideration for GS-15 positions.  To allow the defendant to introduce such evidence at trial would mislead the jury and would require trial of issues involved in the pending 2014 case.

17.    Plaintiff moves in limine to her defendant from introducing into evidence Defendant's Exhibits 57 a certified copy of the Administrative Report of Investigation as hearsay.  Plaintiff has no objection to the parties using the report to refresh witnesses recollection or for impeachment purposes.

18.    Plaintiff moves to bar introduction of Exhibit 40 as hearsay and no foundation.  A review of Exhibit 40, shows that the author of the email on DEF 885 and 886 is not identified. Further this document was never disclosed by the Government until February 4, 2016.  Exhibit H, Emails from Stephen Fieweger to Stephanie Bloom and Hilary Frooman pointing out that defendant had not produced to him documents DEF 870 to 926.  Defendant produced Exhibit 40 for the first time on February 4, 2016.  Plaintiff has no idea who is the author of the email critical of her, and to allow this late disclosure of an exhibit such as this is highly improper and prejudicial.

19.    Plaintiff moves in limine to exclude Exhibit 11, a June 21, 2009 memorandum showing reassignment of Sheila Langfeldt-Abbott.  Not only did the defendant fail to disclose that exhibit prior to the close of discovery, the same is not relevant since it relates to a period of time in which plaintiff was not supervised by Jerry DeLaCruz.  In addition the author of the document, Kathleen Gurrera has not been listed as a witness by the defendant and the same constitutes hearsay.

20.    Plaintiff moves to bar introduction of Exhibits 33 through 36, emails relating to the placement of Rose Barnet in the Assistant to the Deputy Director position in the G-8 as irrelevant and immaterial and also as barred under Federal Rule of Evidence 403 as confusing and misleading the jury.  One of the issues that the jury is to decide on this case or whether DeLaCruz discriminated against Sheila on the basis of her sex and age when in March 2010 he offered the Assistant position to Timothy Gitchel, a younger male less qualified than Sheila to serve as the Assistant to the Deputy Director on a permanent basis and offered him a five percent pay increase.  Mr. Gitchel says DeLaCruz did, DeLaCruz denies it.  What happened later in April and May 2010 after Sheila, Tim Gitchel, and Laura Abney went to the Command to bring to its attention DeLaCruz's misconduct, is irrelevant and will confuse the jury concerning a temporary promotion of Rose Barnett.  By the time of Ms. Bennett's selection by DeLaCruz, he was aware that Sheila was claiming sex and age discrimination in the manner in which she was treated daily and also on the failure to permanently promote her to the Assistant position under NSPS rules. DeLaCruz's temporary promotion of Ms. Bennet is irrelevant to the determination of these issues and was done to cover his past bad behavior toward older female workers that he supervised. Introduction of such evidence will simply confuse the jury as to the issue it has to decide and is irrelevant to the issue of failure to promote Sheila in March 2010.

21.    Plaintiff moves in limine to bar the introduction of Exhibit 37, a April 9, 2010 email from Gerry Handy, EEO Director for the Army Sustainment Command to James Coffman as hearsay.  Mr. Handy is not listed as a witness and has never been disclosed by defendant as a person with knowledge of facts or events relevant to this cause of action.

22.    Plaintiff moves in limine to exclude defendant's Exhibit 41, in that the same constitutes hearsay.  Defendant never disclosed this document prior to the close of discovery, and

it was not listed as witnesses the authors of the emails, Eric W. Miller, Richard J. Shafford and

Michael Buckwalter.  Plaintiff has no objection to the email exchanges between Cara Schay,

Sheila, and Jerry DeLaCruz being admitted into evidence if defendant wants to redact pages 2

and 3 of the exhibit.

23.    Plaintiff moves in limine to bar defendant's Exhibit 58, in that the same was not

produced in pre-trial discovery.  In fact defendant produced this Exhibit for the first time on

February 4, 2016.  Exhibit I a true and correct copy of emails from Hilary Frooman and

Stephanie Booth to Stephen Fieweger concerning Exhibit 58 are attached hereto and made a part

of this motion.  Defendant gives no explanation why it could not have produced this chart in pre-

trial discovery, or for that matter before the January 27, 2016 Final Pre-Trial Conference.

Further, the exhibit is incomplete, because it fails to identify the names of the persons holding

positions that report to Mr. DeLaCruz.

24.    Plaintiff moves in limine to bar defendant for calling Sandra Canada as a witness

to testify as to plaintiff's repeated failure to conduct herself in a professional manner in the

workplace.  In defendant's answer to interrogatory No. 1 Ms. Canada was listed as a person with

knowledge of these alleged facts.  In Exhibit F (page 2),  Plaintiff in request for production No. 9

and 15 to defendant asked for witness statements and all documents in that supported its claim

that Sheila did not perform her duties as a Federal employee in an exemplary manner.  In

answering both requests, defendant stated "all non-privileged responses have been produced in

the ROI (Report of Investigation).

In the ROI there was no statement given by Sandra Canada.  Exhibit J, pages DEF

000255 and DEF 000256 demonstrates that Sandra Canada failed to provide testimony.  There

are no emails or correspondence documenting that Ms. Canada had such knowledge.  Without

such foundational support for such conclusary statement, Ms. Canada should be barred for testifying to such facts.   This is further supported by the fact that Defendant's Exhibits 1 through 9, and 12 to 14 show that Sheila performed at the highest level for a government employee, with no mention of any misconduct by her.

25.    Plaintiff moves in limine to bar the defendant from calling any witnesses to testify at trial that Jerry DeLaCruz did not yell, scream, berate, criticize and created a hostile work environment for Sheila due to the defendant's failure to identify any witnesses who would support its defense.  After receiving defendant's answer denying the allegations in paragraph 9 of the complaint, attached for convenience as Exhibit K, Plaintiff in interrogatory number 2 asked defendant to provide the work address and telephone number of each person who defendant intends to call at trial to support its denial of paragraph 9.  Defendant failed to identify any witnesses with such knowledge and never supplemented its answers to interrogatories.  Federal Rule of Civil Procedure 26(a)(1)(A)(i) and (a)(3) requires the disclosure of individuals likely to leave discoverable information, along with the subjects of that information that the discovery party may use to support his defense.  Further, under Federal Rules of Civil Procedure 26(e) a party must supplement answers to interrogatories that are incomplete.  The defendant never did identify any witnesses who could support this denial, and therefor it should be barred from calling witnesses at trial on this subject.

Wherefore, Plaintiff, Sheila Langfeldt-Abbott hereby requests that this court grant her motion in limine and instruct the defendant's counsel and witnesses to not reference or disclose to the jury the documents or subject matters which are excluded from evidence.

Sheila Langfeldt-Abbott, Plaintiff

By: /s/ Stephen T. Fieweger
Stephen T. Fieweger, P.C., 6195728

Attorney for the Plaintiff
5157 Utica Ridge Rd.
Davenport, IA  52807
Phone:  563.424.1982
Fax:  563.424.1983
Email:  sfieweger@fiewegerlaw.com

Copy to:

Hilary W. Frooman
Assistant States Attorney for the Defendant
United States Attorney's Office
318 S. Sixth Street
Springfield, IL  62701
Phone:  271.492.4450
Fax:  217.492.4888
Hilary.Frooman@usdoj.gov

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing instrument was served upon all parties to the above cause to each of the attorneys of record herein at their respective addresses disclosed on the pleadings on February 5, 2016 by email and United States Postal Service.

By: /s/ Stephen T. Fieweger
Stephen T. Fieweger

RPA Tracker

RPA Tracker

## RPA Information

| | |
|---|---|
| RPA Number | 09JUN3BGASC000562881 |
| Action Requested | REASSIGNMENT |
| PP-Seri-Gr | YA-0301-03 |
| Effective Date | 2009-06-21 |
| Proposed Effective Date | 2009-06-21 |
| Name | LANGFELDTABBOTT SHEILA M |
| Nature of Action | 721 |
| CPAC Location | (BG) ROCK ISLAND |
| Command Code | XC |
| Organization Component | BGXCW0DAAARMA |
| Request ID | 9176322 |
| Position ID | 1041969 |
| Unique Number | 562881 |
| GK | Y |

### Add a New Note (max of 2000 characters allowed):

Add Note

No Note History Available

## Request Office

| | |
|---|---|
| 1. Actions Requested | REASSIGNMENT |
| 2. Request Number | 09JUN3BGASC000562881 (Closed) |
| 3. For Additional Information Call | Guerra, Kathleen A |
| | 782-2643 |
| 4. Proposed Effective Date | 2009-06-21 |
| 5. Actions Requested By | Guerra, Kathleen A |
| | PROGRAMS SPEC |
| | 2009-06-04 |
| 6. Actions Authorized By | Guerra, Kathleen A |
| | PROGRAMS SPEC |

## Part B - Preparation of SF50

| | |
|---|---|
| 1. Name (Last, First, Middle) | Langfeldtabbott Sheila M |
| 2. SSN | *****4739 |
| 4. Date of Birth | 1966-07-29 |
| 4. Effective Date | 2009-06-21 |

Events



GOVERNMENT EXHIBIT 11  12-cv-4117

002281

RPA Tracker

**Event Tracker**
None

**Legacy**
None

**USA Staffing**
None

**Remarks**
None

**Other**
None

**First Action**

| | |
|---|---|
| 5-A. Code | 721 |
| 5-B. Nature of Action | Reassignment |
| 5-C. Code | N2M |
| 5-D. Legal Authority | Reg. 9901.516(e) |
| 5-E. Code | ---- |
| 5-F. Legal Authority | ---- |

**Second Action**

| | |
|---|---|
| 6-A. Code | ---- |
| 6-B. Nature of Action | ---- |
| 6-C. Code | ---- |
| 6-D. Legal Authority | ---- |
| 6-E. Code | --- |
| 6-F. Legal Authority | ---- |

**From Position Data on RPA/NPA**

| | |
|---|---|
| 7. Position Title and Number | SUPV PROGRAM SPEC   242764.1200086 |
| 8. Pay Plan | YA |
| 9. Occ Code | 0301 |
| 10. Grade/Level | 03 |
| 11. Step/Rate | 00 |
| 12. Total Salary | 130453 |
| 12A. Basic Pay | 114573 |
| 12B. Locality Adj | 15880 |
| 12C. Adj. Basic Pay | 130453 |
| 12D. Other Pay | ---- |
| 13. Pay Basis | PA |
| 14. Name and Location of Position's Organization | ---- |
| | U.S. ARMY SUSTAINMENT COMMAND |
| | G8/DEP CHIEF OF STAFF FOR RES MGMT |
| | RESOURCE ANALYSIS DIV RMA00 |
| | ROCK ISLAND, IL 61299-6500 |
| | AMSAS-RMA |

**Other From Position Data**

RPA Tracker

| | |
|---|---|
| From Position Organization Address | BGXCW0DAAARMA |
| From CPAC | BG |
| From Command | XC |
| From UIC | W0DAAA |
| From Organization | RMA |
| From Standard NAFI Number | |
| From NAF Employment Category | |

**To Position Data on RPA/NPA**

| | |
|---|---|
| TO: Position Title and Number | SUPV PROGRAM SPEC   242764.1200086 |
| 16. Pay Plan | YA |
| 17. Occ Code | 0301 |
| 18. Grade/Level | 03 |
| 19. Step/Rate | 00 |
| 20. Total Salary | 136975 |
| 20A. Basic Pay | 120301 |
| 20B. Locality Adj | 16674 |
| 20C. Adj. Basic Pay | 136975 |
| 20D. Other Pay | --- |
| 21. Pay Basis | PA |
| 22. Name and Location of Position's Organization | --- U.S. ARMY SUSTAINMENT COMMAND G8/DEP CHIEF OF STAFF FOR RES MGMT RESOURCE ANALYSIS DIV RMA00 ROCK ISLAND, IL 61299-6500 AMSAS-RMA |

**Other To Position Data**

| | |
|---|---|
| To Position Organization Address | BGXCW0DAAARMA |
| To CPAC | BG |
| To Command | XC |
| To UIC | W0DAAA |
| To Organization | RMA |
| To Standard NAFI Number | |
| To NAF Employment Category | |

**Notes**

----

**Employee Data on RPA/NPA**

| | |
|---|---|
| 23. Veterans Preference | 1 |
| 24. Tenure | 1 |
| 25. Agency Use | ARXC |
| 26. Veterans Preference for RIF | N |
| 27. FEGLI | C0 |
| 28. Annuitant Indicator | 9 |
| 29. Pay Rate Determinant | 0 |
| 30. Retirement Plan | K |
| 31. Service Comp. Date (Leave) | 1989-05-22 |
| 32. Work Schedule | F |
| 33. Part Time Hours Per Bi-Weekly Pay Period | --- |

**Other Employee Data**

RPA Tracker                                                                 Page 4 of 5

Family Member Preference                      ---
NAF Assigned Shift                            ---
NAF Guaranteed Work Hours                     ---
NAF Service Comp. Date (Length of Service)    ---
NAF Military Status                           ---
NAF Dependent Status                          ---

## Position Data

34. Position Occupied                1
35. FLSA Category                    E
36. Appropriation Code               21203100000
37. Bargaining Unit Status           8888
38. Duty Station Code                177470161
39. Duty Station                     ROCK ISLAND / ROCK ISLAND / ILLINOIS
40. Agency Data                      mab
41. Agency Data                      PON# OA
42. Agency Data                      ---
43. Agency Data                      ---
44. Agency Data                      TDA DATA XC/W0DAAA/0082/001
45. Education Level                   17
46. Yr Degree Attained Degree        1999
47. Academic Discipline              520201
48. Functional Class                  00
49. Citizenship                       1
50. Veterans Status                   N
51. Supervisory Status                2

## Remarks

PPP Exception: DOD Operations Manuel CH19F2a(4)- Management directed reassignment,
SCT N/A RPL Exemption, DOD RPL Guide, Jul 03, para H1(a) - Placement of DoD employee
through reassignment This is a permanent reassignment action for Ms. Shella M. Langfeldt
-Abbott which comes with a 5% increase to pay. PPP N/A. Management-directed
reassignment. Some additional duties have been added to Ms. Langfeldt-Abbott's workload
without a significant change to her PD to warrant a re-write since the new Director came
on board. New NSPS worksheet will be sent to Ms. Amber Stroehle by e-mail.

## Approver Signature

Approver Signature                                           Andrea L. DeLille
Approval Date                                                2009-06-09

## Current/Last Box

Group Box             YES-3SF_DIV_X_PROCESS#6-COP
Inbox Name            MARGO.A.BUSH-COP
E-mail Address        ---
Days                  0.02
Date Sent             2009-07-02
Date Received         2009-07-02

| Group Box | Inbox Name | E-mail Address | Days | Date Sent | Date Received |
|---|---|---|---|---|---|
| XYZ_3SF_NC_PROCESS-COP | MARGO.A.BUSH-COP | --- | 0.00 | 2009-07-02 | 2009-07-02 |
| XYZ-3BG_ASC_SUSP-COHS | RAGINA.SMITH-COH | ragina.l.smith.clv@mail.mil | 22.79 | 2009-07-02 | 2009-06-09 |
| --- | ANDREA.DELILLE1-COH | andrea.l.delille.clv@mail.mil | 0.00 | 2009-06-09 | 2009-06-09 |
| XYZ-3BG_ASC-COHN | ANDREA.DELILLE1-COH | andrea.l.delille.clv@mail.mil | 1.16 | 2009-06-09 | 2009-06-08 |
| XYZ-3BG_ASC-COPD | CONNIE.RUPP-COH | connie.rupp@us.army.mil | 4.09 | 2009-06-08 | 2009-06-04 |

002284

RPA Tracker                                                      Page 5 of 5

KATHY.GUERRA-MGR      kathleen.a.guerra.civ@mail.mil  0.01  2009-06-04 2009-06-04

Trier, Paul C CIV USARMY ASC (US)

| | |
|---|---|
| **From:** | Adams, Earl E Mr CIV USA AMC |
| **Sent:** | Thursday, March 04, 2010 12:10 PM |
| **To:** | Ackeret, Tara M CIV USA; Backhaus, Cindy A Ms CIV USA; Bailey, Thomas ; Bancroft, Georgia L CIV USA AMC; Behan, Debra K Ms CIV USA AMC; Benischek, Teresa CIV USA AMC; Best, Gilda E CIV USA; Burk, Douglas; Cade, Judy M CIV USA; Castel, Alphonse Mr CIV USA AMC; COOK, PATRICIA CIV USA AMC; Corkran, Tracey J Ms CIV USA AMC; Coutcher, Joseph Mr CIV USA AMC; Crear, Kristi CIV USA AMC; Dillon-Lucio, Nancy L CIV USA AMC; Dunn, JoAnn M Ms CIV USA AMC; Green, Rainey Ms CIV USA; Malden, Glenda Ms CIV USA AMC; Matala, Sara H Ms CIV USA AMC; McDonald, Cathy A Ms CIV USA AMC; Mitchell, Venita J CIV USA AMC; Muskeyvalley, Joan CIV USA AMC; Myers, Pamela CIV USA; O'Connor, Amy C Mrs CIV USA SDDC; Paladino, Larry ; Reed, Katherine Ms CIV USA AMC; Resetich, Connie J Ms CIV USA AMC; Robb, Russell E Mr CIV USA AMC; Rutkowski, Dennis W CIV USA AMC; Schech, Bernadita S Mrs CIV USA; Schwab, Lisa CIV USA AMC; Sliker, Denise L CIV USA AMC; Smith, Rhonda Y USA; Teyema, Jeff R CIV USA AMC; Theisen, Lisa R Ms CIV USA; Trier, Paul C Mr CIV USA; UNCANGCO, MISSY CIV USA AMC; WILLIAMS, ELIZABETH Ms CIV USA AMC; Wolfe, Carolyn G CIV USA AMC |
| **Cc:** | Adams, Earl E Mr CIV USA AMC; Besser, Kevin R Mr CIV USA AMC; Baxter, William H CIV USA; Conyers, Ann M Mrs CIV USA |
| **Subject:** | FW: DoD approved Transition Plan  (UNCLASSIFIED) |
| **Attachments:** | Final Transition Plan for Distro DoD approved.pdf; NSPS Transition FAQs 022210.pdf |

Classification: UNCLASSIFIED
Caveats: NONE

NSPS TMs,

DoD has approved the Army NSPS Transition Plan (attached) and has advised that we may begin communicating with the workforce regarding the transition. While we consider the dates firm, a number of conditions may result in revising the dates. These include a failure to deliver fully tested mass conversion IT capability, insufficient funding, unanticipated missions, or an unexpected surge in reclassification requests that cannot be accomplished before planned dates.

Transition Out Date: All AMC activities/personnel will transition out of NSPS on 20 June 2010 unless approved for delay.  The Science & Technology Labs are required by the NDAA to transition out to a Lab Demonstration and so are approved for delay to allow time to work that process.  Delay has also been approved for those organizations who came from and will return to the Acquisition Demonstration Program.  This delay is necessary while DoD works an extension of the demonstration program.

Recruitment: Effective 1 March, unless organizations/positions have been approved for delay, CHRA began advertising positions as GS rather than NSPS.

Classification: The GS equivalency is documented on most NSPS position descriptions (PDs). This documented equivalency will be used to determine the grade of employees when they transition out of NSPS. Any new PDs will be classified as GS.

Pay Setting: To begin aligning NSPS employee pay with the GS pay scale, managers should consider setting salary for NSPS new hires, reassignments,

GOVERNMENT
EXHIBIT
16
12-cv-4117

1

DEF 000929

and promotions at an exact step of the GS equivalent grade of the position, after applying standard NSPS pay setting rules (e.g., minimum of 6% increase on promotion, maximum of 5% increase upon reassignment, etc.).

No Loss of Pay:  Upon transition out, no employee will suffer a decrease in pay due to conversion from NSPS to GS.  An employee's current salary will be set on a step within the rate range for his/her assigned grade using GS compensation rules. If the NSPS adjusted salary falls between two steps, the salary will be set at the higher step.  If the NSPS adjusted salary falls below step 1 of the GS grade, salary will be set at the step 1 rate. If the NSPS adjusted salary exceeds step 10 of the grade, the employee will be placed on retained pay.

Training: GS101, a web-based course on the NSPS website, covers the basics of the GS system for employees who may never have worked under the GS system, or who want a refresher course.

Also, attached are some frequently asked questions compiled by the DoD NSPS office to assist in answering employee questions.

If you have any further questions please feel free to contact me.

Thanks,

Earl

Earl E. Adams
Performance Management Team
HQAMC FWD (G-1)
Field Support Division
7611 Cardinal Road Rm 103
Redstone Arsenal, AL 35898
Phone: Commercial: 256-450-9238; DSN: 320-9238
Email: earl.adams3@us.army.mill

Classification: UNCLASSIFIED
Caveats: NONE

DEF 000930



NSPS Transition Office
Transition FAQs
February 22, 2010

## Frequently Asked Questions (FAQs)

Q. What does the phrase "no loss of or decrease in pay upon conversion" really mean?

A. No loss of or decrease in pay upon conversion means that an employee's pay upon conversion will not decrease because of the termination of NSPS.

Q. When I transition to the General Schedule (GS) system, how will my grade and pay be determined?

A. Based on application of GS classification criteria to your assigned duties and responsibilities, your permanent position will be classified to a GS grade. Once the grade is determined, your current salary will be set on a step within the rate range for your assigned grade using GS compensation rules as follows:

- If your NSPS adjusted salary falls between two steps, your salary will be set at the higher step.
- If your NSPS adjusted salary falls below step 1 of the grade, your salary will be set at the step 1 rate.
- If your NSPS adjusted salary exceeds step 10 of the grade, you will be placed on retained pay.

Q. What is retained pay?

A. Retained pay is a provision under the GS system that allows employees whose salary exceeds Step 10 of their assigned grade to keep their pay.

Q. If my salary falls between two steps of my assigned grade, what step will I be assigned?

A. If your salary falls between two steps for your assigned grade, you will be placed on the higher step.

Q. Who determines my grade?

A. A Human Resources Specialist, or a supervisor or manager with delegated classification authority, determines your grade using GS classification criteria. This determination is based on the duties and responsibilities assigned by your supervisor.

NSPSTO



GOVERNMENT
EXHIBIT
17
12-cv-4117

1

DEF 000936



**NSPS Transition Office**
**Transition FAQs**
**February 19, 2010**

**Q.** If I converted into NSPS from a GS-12 permanent position and my duties and responsibilities have not changed, will I be transitioned from NSPS at the GS-12 grade level?

**A.** Yes. Employees who remain in the position from which they were converted to NSPS will return to the GS grade they were previously assigned. However, a change in duties, a change in the classification criteria, or a previously misclassified GS position may result in a different grade. Your grade will be determined using GS classification criteria and is based on your permanent duties and responsibilities assigned by your supervisor.

**Q.** The law says DoD has until January 1, 2012 to transition everyone from NSPS. When will I be notified of my transition date?

**A.** The NSPS Transition Office is reviewing proposed transition plans and timelines. Once the plans are approved, employees will be advised through their Component channels of the transition date. The Department's goal is to have the majority of employees transitioned from NSPS by September 30, 2010.

**Q.** What can I do to prepare for the transition?

**A.** You can:

- Sign up for NSPS web alerts on the NSPS website homepage so you receive routine updates.

- Bookmark the NSPS website and visit it often.

- Take *GS101*, a web-based course on the NSPS website, covering the basics of the GS system.

- Read the transition-related guidance.

The NSPS website address is http://www.cpms.osd.mil/nsps.

DEF 000937

UNCLASSIFIED

DEF 000926



DEPARTMENT OF THE ARMY
HEADQUARTERS, U.S. ARMY SUSTAINMENT COMMAND
1 ROCK ISLAND ARSENAL
ROCK ISLAND, IL 61299-6500

REPLY TO
ATTENTION OF:

SEP 2 9 2009

AMSAS-CG

MEMORANDUM FOR All HQ ASC Organizations

SUBJECT:  Temporary Promotions of 120 Days Or Less - ASC Policy # 690-18

1.  This policy applies only to temporary promotions to HQ ASC positions *not* impacted by implementation of the National Security Personnel System (NSPS).  (See ASC Regulation 690-14 for guidance on temporary promotions of 180 days or less for NSPS positions.)

2.  For temporary promotions of 120 days or less (i.e., "short-term promotions"), it is my policy to provide a fair and equitable method for competition without performing the time-consuming details of the formal recruitment process.  All eligible members of a "pool," from which the selection is made, will have a chance to compete.  The definition of the "pool" of consideration is as follows:  a) If selection is restricted to one branch, then the branch is the pool; b) If more than one branch of the same division is included, then the whole division is the pool; c) If the selection crosses division lines in the same directorate, then the whole directorate is the pool; d) If the selection crosses directorate lines, then the whole HQ ASC is the pool.

3.  A standardized method, such as e-mail, will be used to notify members of the pool of consideration of the temporary vacancy.  Prospective candidates will be allowed to submit their input concerning their eligibility for the position via resumes or other standardized format.  Reasonable care will be taken to give eligible candidates on TDY or leave a chance to compete.

4.  Legitimate mission consideration may prevent releasing an employee for a lateral reassignment or change-to-lower-grade (CLG) position under the provisions of this policy.  However, management may deny an employee from taking such a lateral reassignment or CLG only if both the employee's immediate supervisor and second-level supervisor agree that it would adversely affect mission capability.

5.  The POC is the DCS for G-1, email rock-amsas-hro@conus.army.mil, DSN 793-0270.

Airborne!

YVES J. FONTAINE
Major General, USA
Commanding

UNCLASSIFIED

269

000301

GOVERNMENT
EXHIBIT
18
12-cv-4117

TAB J, Document 1D

**DeLaCruz, Jerry D CIV USA AMC**

| | |
|---|---|
| **From:** | DeLaCruz, Jerry D CIV USA AMC |
| **Sent:** | Tuesday, November 23, 2010 11:08 AM |
| **To:** | Abbott, Sheila Ms CIV USA AMC; Abney, Laura M CIV USA AMC; Allen, Troy Mr CIV USA AMC; Arguello, Frank Mr CIV USA AMC; Aude, Bruce E Mr CIV USA AMC; Ausborn, Carmen A CIV USA IMCOM; Barnet, Rose CIV USA AMC; Barth, Greg CIV USA AMC; Beaudry, Benjamin T Mr CIV USA AMC; Bloom, Stephanie Ms CIV USA AMC; Buffington, Robyn M Mrs CIV USA AMC; Canada, Sandra Mrs CIV USA AMC; Cewe, Brian J CIV USA AMC; Cooper, Brandon M Mr CIV USA AMC; Cramond, Kerl L CIV USA AMC; Davis, Scott CIV USA AMC; DeBisschop, Deanna M CIV USA AMC; DeLaCruz, Jerry D CIV USA AMC; DeMarlie, Kristin Ms CIV USA AMC; Derby, Stephanie L CIV USA USA; DeVolder, Adelle N CIV USA; Dunlap, Jennifer M Miss CIV USA; Edwards, Bryan M CIV USA AMC; Essex, Ashley R Mrs CIV USA AMC; Flemming, Jacqueline N Ms CIV USA AMC; Flemming, Timothy Mr CIV USA AMC; Fore, Chelsea M CIV USA; Gainey, Bruce D Mr CIV USA AMC; Gatewood, Roxanne CIV USA AMC; Gitchel, Tim Mr CIV USA AMC; Gordon, Kimberly N CIV USA; Helms, Matthew B Mr CIV USA AMC; Ivy, Jesse CIV USA AMC; Jensen, Elizabeth A CIV USA; Jones, Kevin A Mr CIV USA AMC; Kruse, Kelly D CIV USA; Lawson, Janelle Ms CIV USA AMC; Leffler, Judith A Mrs CIV USA AMC; Leonard, Susan D CIV USA AMC; Lotz, Ann E CIV USA AMC; Matherly, Kurt T Mr CIV USA AMC; Meler, Peggy L CIV USA AMC; Menster, Martin T CIV USA AMC; Miller, Steven P Mr CIV USA AMC; Moore, Ann Ms CIV USA AMC; Muskeyvalley, Joan CIV USA AMC; O'Malley, Debbie L Miss CIV USA AMC; Otero, Elysa E CIV USA; Peer, Lisa D Mrs CIV USA AMC; Peppers, Cannon P CIV USA AMC; Peterson, Meghan A Miss CIV USA AMC; Pineda, Camilo CIV USA; Poling, Aletha K Ms CIV USA AMC; Ralston, Kay CIV USA AMC; Remaly, Jason M Mr CIV USA AMC; Richardson, Catrina D CIV USA AMC; Rielly, Linda K CIV USA AMC; Ruiz, Valerie J Ms CIV USA AMC; Sanchez, Nora M Ms CIV USA AMC; Sawvell, Cheryl CIV USA AMC; Schou, Jennifer A Miss CIV USA AMC; Sharfe, Ruth J Mrs CIV USA AMC; Simons, Denise CIV USA AMC; Streeter, Brandon R CIV USA AMC; Theisen, Mark CIV USA AMC; Thomsen, Katrina Ms CIV USA; Thomsen, Richard S CIV USA; Thoren, Theresa M Ms CIV USA AMC; Vande Wiele, Jill Ms CIV USA AMC; VandeVoorde, Sandra J Ms CIV USA AMC; Washam, Ronald P Mr CIV USA AMC; Weber, Constance M CIV USA AMC; Widener, Tonya Ms CIV USA AMC; Williams, Tayonia CPT MIL USA; Zahniser, James A CIV USA AMC; Zeigler, Daphne M Mrs CIV US USA |
| **Cc:** | Dix, Richard COL MIL USA; Abbott, Sheila Ms CIV USA AMC; Abney, Laura M CIV USA AMC; Akers, Candy CIV USA IMCOM; Aude, Bruce E Mr CIV USA AMC; 'Ball, James'; Barnet, Rose CIV USA AMC; Barth, Greg CIV USA AMC; Beaudry, Benjamin T Mr CIV USA AMC; 'Blake, Darrin'; 'Blassingame, Marguerite'; Bloom, Stephanie Ms CIV USA AMC; Bommarito, Chien Mrs CIV USA AMC; Bradley, Debra J CIV USA AMC; Brown, Teresa L CIV USA AMC; 'Buttelmann, Rik'; Pineda, Camilo CIV USA; 'Campbell, Renee'; Canada, Sandra Mrs CIV USA AMC; Causemaker, Susan M Ms CIV USA AMC; 'Cogswell, Howard'; Cooper, Brandon M Mr CIV USA AMC; Cramond, Kerl L CIV USA AMC; Davis-Hoffman, Emily Ms CIV USA AMC; DeLaCruz, Jerry D CIV USA AMC; Dunlap, Jennifer M Miss CIV USA; Edwards, Sherry CIV USA AMC; Essex, Ashley R Mrs CIV USA AMC; Flemming, Jacqueline N Ms CIV USA AMC; Gatewood, Roxanne CIV USA AMC; Gitchel, Tim Mr CIV USA AMC; 'Harris, Yong'; Ivy, Jesse CIV USA AMC; Porter, Janet R Mrs CIV USA AMC; Kenyon, Thomas E CIV USA AMC; Kratzberg, Christina M CIV USA AMC; Leonard, Susan D CIV USA AMC; Marcello, Patricia CIV USA AMC; Marchan, Carlos D CIV USA; Marshall, Debbie L Ms CIV USA AMC; Marshall, Diana CIV USA AMC; Meler, Peggy L CIV USA AMC; Moore, Rose Mrs CIV USA; 'Nam, Mi C.'; Nevarez, Nancy M Ms CIV USA AMC; Newman, Deborah A CIV USA AMC; 'Nora Crawford'; Ormiston, Kim; Parmenter, Barbara L Mrs CIV USA AMC; Peterson, Meghan A Miss CIV USA AMC; Reed, Michael D Mr CIV USA AMC; Remaly, Jason M Mr CIV USA AMC; Richardson, Catrina D CIV USA AMC; Rielly, Linda K CIV USA AMC; Rossi, Patrizia; Rossi, Patrizia; Ruiz, Valerie J Ms CIV USA AMC; Sanchez, Nora M Ms CIV USA AMC; Sanders, Rick E Mr CIV USA AMC; 'Skinner, Cheryl R.'; Smith, Eric CIV USA; Strickland, Sharon L Ms CTR US USA MEDCOM BACH; Thomsen, Richard S CIV USA; Williams, Tomesia Mrs CIV USA; Vande Wiele, Jill Ms CIV USA AMC; Williams, Tayonia CPT MIL USA; Woodward, Melony Mrs CIV USA ATEC; Rodriguez, Yanna CIV USA; Youtzy, Janet L CIV USA AMC |
| **Subject:** | Happy Thanksgiving |

GOVERNMENT EXHIBIT 32
12-cv-4117

1

000401

ASC G8/S8 Team...All, I just wanted to say Happy Thanksgiving to you and all your Families. There are lots of goodness to be thankful for and I am thankful and proud for the opportunity to serve w selfless Civilians and Soldiers like you and this great ASC G8 Team. Please take a few moments over the Holiday to think of all of our Soldiers, Civilians, and their Families that are deployed and defending the rights that we so freely enjoy! Please be safe and enjoy this special time with your Family and Friends, take care, thx vr Jerry

Jerry D. De La Cruz, Jr.
Army Sustainment Command (AMSAS-RM)
G8, Deputy Chief of Staff for Resource Management
COM: 309-782-0702
DSN: 793-0702
Mobile: 309-716-5067
jerry.delacruz@conus.army.mil
SIPR: delacruzj@LADC-ROCK4.smil.mil

000402

DEF 000913

## Bloom, Stephanie Ms CIV USA AMC

From:            Fennelly, Ann P CIV USA
Sent:            Wednesday, August 25, 2010 1:29 PM
To:              Bloom, Stephanie Ms CIV USA AMC
Subject:         FW: Solicitation #ASC-10-321 - Temporary Promotion/Reassignment Opportunity, AMSAS-
                 RM, Supervisory Financial Mgmt Specialist, GS-0501-14 - S: COB 21 Apr 10
Attachments:     SUPV FIN MGMT SPEC_GS-0501-14_G8.pdf; ResumeApril 2010.doc; Brian Kent.doc;
                 Resume Richard L Jayne 21 Apr.docx; Youtzy-resume-4-20-2010.doc
Signed By:       ann.fennelly@us.army.mil

Importance:      High


-----Original Message-----
From: Fennelly, Ann P CIV USA
Sent: Thursday, April 22, 2010 8:10 AM
To: DeLaCruz, Jerry D CIV USA AMC
Subject: FW: Solicitation #ASC-10-321 - Temporary Promotion/Reassignment
Opportunity, AMSAS-RM, Supervisory Financial Mgmt Specialist, GS-0501-14 -
S: COB 21 Apr 10
Importance: High


Jerry,

Attached are the four resumes (Barnet, Kent, Jayne, Youtzy) for the subject
solicitation (Asst Deputy Chief of Staff for RM). The PD was loaded into
FASCLASS but has not yet been finalized by the CPAC. The draft PD is
attached.

Please advise of your selection.

Thanks,
Ann x6247

-----Original Message-----
From: Fennelly, Ann P CIV USA
Sent: Wednesday, April 14, 2010 2:25 PM
To: DL_ASC-HQPERS
Cc: DeLaCruz, Jerry D CIV USA AMC
Subject: FW: Solicitation #ASC-10-321 - Temporary Promotion/Reassignment
Opportunity, AMSAS-RM, Supervisory Financial Mgmt Specialist, GS-0501-14 -
S: COB 21 Apr 10
Importance: High


Clarification of eligibility:  Applicants must be a current federal
employee; term and temporary employees are not eligible to apply.
Applicants must be employees permanently assigned to HQ ASC.

-----Original Message-----
From: Fennelly, Ann P CIV USA
Sent: Wednesday, April 14, 2010 10:37 AM
To: DL_ASC-HQPERS
Cc: DeLaCruz, Jerry D CIV USA AMC
Subject: Solicitation #ASC-10-321 - Temporary Promotion/Reassignment

GOVERNMENT
EXHIBIT

33

12-cv-4117

000279

TBR A Document 14

DEF 000914

Opportunity, AMSAS-RM, Supervisory Financial Mgmt Specialist, GS-0501-14 -
S; COB 21 Apr 10
Importance: High

THIS SOLICITATION OPEN TO HQ ASC EMPLOYEES ONLY

This is an opportunity for a Temporary Promotion/Reassignment NTE 120 days,
Reference ASC Policy 690-18, dated 29 Sep 09, Temporary Promotions of 120
Days or Less.

The ASC, G8/Deputy Chief of Staff for Resource Management is soliciting
résumés for the ASC Assistant Deputy Chief of Staff for Resource Management,
a Supervisory Financial Management Specialist, GS-0501-14 position. See the
attached draft job description for a description of the duties.

Interested applicants should submit their resumes to:
Ann.fennelly@us.army.mil by COB 21 April 2010.

Please reference the tracking number #ASC-10-321 in the subject of the
email.

POC:  Ann Fennelly, AMSAS-HRO, ext 26247.

Ann Fennelly
Programs Specialist (Human Resources)
HQ, US Army Sustainment Command
ATTN: AMSAS-HRO/G1
1 Rock Island Arsenal
Rock Island, IL 61299-6500
DSN 793-6247 / Comm 309-782-6247
AKO: ann.fennelly@us.army.mil


Privacy Act - 1974 as Amended applies--If this E-mail or attachments contain
personal and/or assignment information, it must be protected IAW DoD
5400.11R and it is For Official Use Only (FOUO).

TAB N, Document 14     000280

DEF 000915

## Bloom, Stephanie Ms CIV USA AMC

| | |
|---|---|
| From: | Fennelly, Ann P CIV USA |
| Sent: | Wednesday, August 25, 2010 1:29 PM |
| To: | Bloom, Stephanie Ms CIV USA AMC |
| Subject: | FW: Solicitation for Temp 120 days, G8 Deputy |
| Signed By: | ann.fennelly@us.army.mil |

-----Original Message-----
From: DeLaCruz, Jerry D CIV USA AMC
Sent: Friday, May 07, 2010 11:46 AM
To: Fennelly, Ann P CIV USA
Cc: Schneider, Sandra L Ms CIV USA AMC
Subject: Solicitation for Temp 120 days, G8 Deputy

Ann, I select Rose Barnet from the solicitation for the temp 120 days G8 deputy. Pls advise when her effective date is. Thx vr jerry

Jerry D. De La Cruz, Jr.
Army Sustainment Command (AMSAS-RM)
G8, Deputy Chief of Staff for Resource Management
COM: 309-782-0702
DSN: 793-0702
Mobile: 309-716-5067
jerry.delacruz@conus.army.mil
SIPR: delacruz.j@LADC-ROCK4.smil.mil

GOVERNMENT
EXHIBIT
34
12-cv-4117

**250**

000282

TAB N, Document 14

DEF 000922

serve temporarily NTE 120 days as the Assistant Deputy Chief of Staff for
Resource Management (G8).  Please do not hesitate to contact her for any/all
G8 issues (DSN 793-XXXX, rose.barnet@us.army.mil).  Rose brings a great deal
of resource management expertise with her to this position.


Lorri

-----Original Message-----
From: DeLaCruz, Jerry D CIV USA AMC
Sent: Tuesday, May 25, 2010 10:36 AM
To: Fennelly, Ann P CIV USA
Subject: RE: Selection from Solicitation - Barnet

Ann, yes please. Thx vr jerry

Break...what is status of 120 day temp for GFEBS- Tim Flemming? Thx vr jerry

Jerry D. De La Cruz, Jr.
Army Sustainment Command (AMSAS-RM)
G8, Deputy Chief of Staff for Resource Management
COM: 309-782-0702
DSN: 793-0702
Mobile: 309-716-5067
jerry.delacruz@conus.army.mil
SIPR: delacruzj@LADC-ROCK4.smil.mil


-----Original Message-----
From: Fennelly, Ann P CIV USA
Sent: Tuesday, May 25, 2010 10:17 AM
To: DeLaCruz, Jerry D CIV USA AMC
Subject: Selection from Solicitation - Barnet

Jerry,

We received the approval from the Command Group for the selection (from the
solicitation) of Rose Barnet. This will be a temp reassignment NTE 120 days
to a YA-501-03, PD 342329.  Is your intent to increase her pay by 5%?

I will prepare a pay sheet that we need you to sign when I submit the RPA
for the temp reassignment. We will try for a 6/6/10 effective date.

Thanks,
Ann

-----Original Message-----
From: DeLaCruz, Jerry D CIV USA AMC
Sent: Friday, May 07, 2010 11:48 AM
To: Fennelly, Ann P CIV USA
Cc: Schneider, Sandra L Ms CIV USA AMC
Subject: Solicitation for Temp 120 days, G8 Deputy

Ann, I select Rose Barnet from the solicitation for the temp 120 days G8
deputy. Pls advise when her effective date is. Thx vr jerry

Jerry D. De La Cruz, Jr.



GOVERNMENT
EXHIBIT
35
12-cv-4117

257

000289
TAB N, Document 1H

DEF 000923

Army Sustainment Command (AMSAS-RM)
G8, Deputy Chief of Staff for Resource Management
COM: 309-782-0702
DSN: 793-0702
Mobile: 309-716-5067
jerry.delacruz@conus.army.mil
SIPR: delacruz@LADC-ROCK4.smil.mil

000290

TARs N Document ???

DEF 000921

**Bloom, Stephanie Ms CIV USA AMC**

| | |
|---|---|
| From: | Fennelly, Ann P CIV USA |
| Sent: | Wednesday, August 25, 2010 1:36 PM |
| To: | Bloom, Stephanie Ms CIV USA AMC |
| Subject: | FW: Selection from Solicitation - Barnet |
| Signed By: | ann.fennelly@us.army.mil |

-----Original Message-----
From: DeLaCruz, Jerry D CIV USA AMC
Sent: Thursday, May 27, 2010 4:27 PM
To: Thompson, Lorri A CIV USA AMC
Cc: Fennelly, Ann P CIV USA
Subject: RE: Selection from Solicitation - Barnet

Lorri, roger, thankyou very much, Vr Jerry

Jerry D. De La Cruz, Jr.
Army Sustainment Command (AMSAS-RM)
G8, Deputy Chief of Staff for Resource Management
COM: 309-782-0702
DSN: 793-0702
Mobile: 309-716-5067
jerry.delacruz@conus.army.mil
SIPR: delacruz@LADC-ROCK4.smil.mil

-----Original Message-----
From: Thompson, Lorri A CIV USA AMC
Sent: Thursday, May 27, 2010 3:56 PM
To: DeLaCruz, Jerry D CIV USA AMC
Cc: Fennelly, Ann P CIV USA; Thompson, Lorri A CIV USA AMC
Subject: FW: Selection from Solicitation - Barnet

Jerry,  Hope this helps - please make sure Rose is aware that there will be
no personnel action completed for this 120 day delegation.  At the end of
the delegation if Rose wants credit for this in her 201 file she will need
to do an update with her SSN and name just on bond paper, have you sign and
then send to the CPAC.

Per our conversation today, we are to cancel the temp reassignment NTE 120
days for Barnet (selected from the solicitation for the YA-3 Asst Deputy
position).  The conversion from NSPS to GS on 6/20/10 would only allow Ms.
Barnet to be reassigned to the YA-3 for one pay period prior to conversion
to GS.  It would not be a benefit to reassign Rose to the temp Deputy G8 for
one pay period.  Upon conversion back to GS we would only be able to
reassign her to the GS-14 with no increase in pay.  By just delegating her
to act as the Deputy G8 you have the avenue of rewarding her with a
on-the-spot or SSA.

SAMPLE DELEGATION:

Effective immediately Ms. Rose Barnet has been delegated the authority to

**256**

GOVERNMENT
EXHIBIT
36
12-cv-4117

000288
~TAB AY Document 14

DEF 000924

Bloom, Stephanie Ms CIV USA AMC

From:           Fennelly, Ann P CIV USA
Sent:           Wednesday, August 25, 2010 1:37 PM
To:             Bloom, Stephanie Ms CIV USA AMC
Subject:        FW: Selection from Solicitation - Barnet
Signed By:      ann.fennelly@us.army.mil


-----Original Message-----
From: DeLaCruz, Jerry D CIV USA AMC
Sent: Tuesday, June 01, 2010 9:19 AM
To: Fennelly, Ann P CIV USA
Subject: RE: Selection from Solicitation - Barnet

Ann, not yet. Will discuss w her today. Thx vr jerry

-----Original Message-----
From: Fennelly, Ann P CIV USA
Sent: Tuesday, June 01, 2010 9:10 AM
To: DeLaCruz, Jerry D CIV USA AMC
Subject: RE: Selection from Solicitation - Barnet

Jerry;

I contacted the CPAC to cancel the temp action for Rose.  Have you informed
Rose of the situation?  I would like to be aware in case she asks me about
it.

Thanks,
Ann

-----Original Message-----
From: DeLaCruz, Jerry D CIV USA AMC
Sent: Thursday, May 27, 2010 4:27 PM
To: Thompson, Lorri A CIV USA AMC
Cc: Fennelly, Ann P CIV USA
Subject: RE: Selection from Solicitation - Barnet

Lorri; roger, thankyou very much. Vr jerry

Jerry D. De La Cruz, Jr.
Army Sustainment Command (AMSAS-RM)
G8, Deputy Chief of Staff for Resource Management
COM: 309-782-0702
DSN: 793-0702
Mobile: 309-716-5067
jerry.delacruz@conus.army.mil
SIPR: delacruzj@LADC-ROCK4.smil.mil


-----Original Message-----
From: Thompson, Lorri A CIV USA AMC
Sent: Thursday, May 27, 2010 3:56 PM
To: DeLaCruz, Jerry D CIV USA AMC

i
**259**

000291
TAB N, Document 14

DEF 000925

Cc: Fennelly, Ann P CIV USA; Thompson, Lorri A CIV USA AMC
Subject: FW: Selection from Solicitation - Barnet

Jerry, Hope this helps - please make sure Rose is aware that there will be
no personnel action completed for this 120 day delegation. At the end of
the delegation if Rose wants credit for this in her 201 file she will need
to do an update with her SSN and name just on Bond Paper, have you sign and
then send to the CPAC.

Per our conversation today, we are to cancel the temp reassignment NTE 120
days for Barnet (selected from the solicitation for the YA-3 Asst Deputy
position). The conversion from NSPS to GS on 6/20/10 would only allow Ms.
Barnet to be reassigned to the YA-3 for one pay period prior to conversion
to GS. It would not be a benefit to reassign Rose to the temp Deputy G8 for
one pay period. Upon conversion back to GS we would only be able to
reassign her to the GS-14 with no increase in pay. By just delegating her
to act as the Deputy G8 you have the avenue of rewarding her with a
on-the-spot or SSA.

SAMPLE DELEGATION:

Effective immediately Ms. Rose Barnet has been delegated the authority to
serve temporarily NTE 120 days as the Assistant Deputy Chief of Staff for
Resource Management (G8). Please do not hesitate to contact her for any/all
G8 issues (DSN 793-XXXX, rose.barnet@us.army.mil). Rose brings a great deal
of resource management expertise with her to this position.


Lorri

-----Original Message-----
From: DeLaCruz, Jerry D CIV USA AMC
Sent: Tuesday, May 25, 2010 10:36 AM
To: Fennelly, Ann P CIV USA
Subject: RE: Selection from Solicitation - Barnet

Ann, yes please. Thx vr jerry

Break...what is status of 120 day temp for GFEBS- Tim Flemming? Thx vr jerry

Jerry D. De La Cruz, Jr.
Army Sustainment Command (AMSAS-RM)
G8, Deputy Chief of Staff for Resource Management
COM: 309-782-0702
DSN: 793-0702
Mobile) 309-716-5067
jerry.delacruz@conus.army.mil
SIPR; delacruzj@LADC.ROCK4.smil.mil


-----Original Message-----
From: Fennelly, Ann P CIV USA
Sent: Tuesday, May 25, 2010 10:17 AM
To: DeLaCruz, Jerry D CIV USA AMC
Subject: Selection from Solicitation - Barnet

000292
TAB N, Document 14

**Coffman, James M CIV USARMY ASC (US)**

| | |
|---|---|
| **From:** | Handy, Gerald P Mr CIV USA IMCOM |
| **Sent:** | Friday, April 09, 2010 9:33 AM |
| **To:** | Coffman, James M CIV USA AMC |
| **Cc:** | Marshall, Rachel C Ms CIV USA IMCOM |
| **Subject:** | RE: G-8 Chiefs |

Thank you Sir

V/R,
Gerry Handy
Complaints Manager
Rock Island Arsenal EEO
309.782.1488

FOR OFFICIAL USE ONLY - This email and any attachments may contain information that is protected from disclosure by Federal law (the Privacy Act of 1974) and should be viewed only by those with an official "need to know." If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of the content of this information is prohibited. If you have received this communication in error, please notify me immediately by e-mail, delete the original message, and destroy any hard copies you may have created. Any misuse or unauthorized disclosure may result in both civil and criminal penalties.

-----Original Message-----
From: Coffman, James M CIV USA AMC
Sent: Friday, April 09, 2010 9:28 AM
To: Handy, Gerald P Mr CIV USA IMCOM
Subject: Re: G-8 Chiefs

Thxs...my staff is working a meeting with them now. I talked to Mr. DeLaCruz and we are going to meet separately, but there is a plan.
Jim

----- Original Message -----
From: Handy, Gerald P Mr CIV USA IMCOM
To: Coffman, James M CIV USA AMC
Cc: Marshall, Rachel C Ms CIV USA IMCOM
Sent: Fri Apr 09 07:28:29 2010
Subject: G-8 Chiefs

Good Morning Mr. Coffman,

I just received a call from Sheila, she feels that the Command Group is not "protecting them" and is doing nothing to resolve their issues. I told her that if they wanted to file a complaint, they could certainly do that, and that they need to make a decision on how they want to proceed, however I recommended that they get on your calendar and let the command group try to resolve it, however you see fit.

She is hell-bent on a 15-6 being conducted, and stated that they do not have to "put up with this."

I believe it may give them SOME satisfaction to know what the plan of action is going to be.

1



GOVERNMENT EXHIBIT
37
4:12-cv-4117

DEF 000967

V/R,
Gerry Handy
Complaints Manager
Rock Island Arsenal EEO
309.782.1488

FOR OFFICIAL USE ONLY - This email and any attachments may contain information that is protected from disclosure by Federal law (the Privacy Act of 1974) and should be viewed only by those with an official "need to know."  If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of the content of this information is prohibited.  If you have received this communication in error, please notify me immediately by e-mail, delete the original message, and destroy any hard copies you may have created.  Any misuse or unauthorized disclosure may result in both civil and criminal penalties.

DEF 000968

DEF 000885

DeLaCruz, Jerry D CIV USA AMC

Subject:          FW: Feedback
)

-----Original Message-----
From: Sent: Monday, March 22, 2010 2:45 PM
To: DeLaCruz, Jerry D CIV USA AMC
Subject: RE: Feedback

Hi Mr. DeLaCruz,

Sorry, it took me so long to give a response. I don't want to be one to make things bigger than necessary or stir things up. Honestly, I have brushed it off and not let it bother me. However as your request, I will tell you what exactly happened with this incident.

On I believe it was Thursday, March 18th. You and a few others were in here (Command Group) for a meeting. You kindly asked me how my baby son was doing and we discussed him and the asthma problems he has been having. After you walked through the doors to go back to your meeting, your colleagues followed behind. One being Sheila Abbott (as I was informed, I did not know this woman's name before this date). As Sheila walked by my desk she looks to her co-workers on each side of her and says in a sarcastic and rude tone "So, aren't you guys gonna ask me about my daughter?! SO, how is your son?
And your son? Being it SEEMS to be the question of the day and everything!"
The only reason I spoke of it, is because it honestly stunned me. I didn't understand the rude comment or tone at all especially being it was regarding the concerns of me speaking about my baby son who is ill. I found it uncalled for and at just left me speechless because I have never dealt with someone in that sarcastic and rude manner. I have nothing but good experiences with people and I was a little taken back. I don't wish to get anyone in trouble at all, just stating the facts of what happened. Thank you very much for your concerns and apology although it is not at all your fault and blame. Have a great day and thank for the help.

49

TAB C

GOVERNMENT
EXHIBIT
40
12-cv-4117

000081

DEF 000886

DelaCruz, Jerry D CIV USA AMC

Subject:                FW: followup

Sent: Monday, March 22, 2010 3:20 PM
To: DelaCruz, Jerry D CIV USA AMC
Subject: RE: followup

Thank you sincerely for your concerns. I really do appreciate it. You and Debbie have a great
night! You are both great people to work with.

-----Original Message-----
From: DelaCruz, Jerry D CIV USA AMC
Sent: Monday, March 22, 2010 3:16 PM
To: Subject: followup

, thankyou for the feedback. Again I apologize for all my chiefs behavior and I don't
tolerate this at all. Our people are why we are so good and we don't do enough to find out
how they are doing...I hope your son is getting better and that is what is important to me
and the leadership! Thx vr jerry

TAB (kast)
000082

DEF 000891

**DeLaCruz, Jerry D CIV USA AMC**

| | |
|---|---|
| **From:** | Abbott, Sheila Ms CIV USA AMC |
| **Sent:** | Tuesday, October 13, 2009 4:29 PM |
| **To:** | DeLaCruz, Jerry D CIV USA AMC; Schay, Cara Ms CIV USA AMC; Abney, Laura M CIV USA AMC |
| **Cc:** | Abbott, Sheila Ms CIV USA AMC |
| **Subject:** | RE: Tri-cons & Quad-cons (earmark due-outs) - ASST Sec Army FMC |

Got it. Rest assured that AMC has not coming directly to me on anything that you are not
aware of, and if and when they do, I clearly understand the chain of command...20+ years of
government service has taught me that. Not sure why you would think otherwise. I will make
also make sure to swim only in my lane.

Sheila

-----Original Message-----
From: DeLaCruz, Jerry D CIV USA AMC
Sent: Tuesday, October 13, 2009 3:29 PM
To: Abbott, Sheila Ms CIV USA AMC; Schay, Cara Ms CIV USA AMC; Abney, Laura M CIV USA AMC
Subject: RE: Tri-cons & Quad-cons (earmark due-outs) - ASST Sec Army FMC

Sheila, I now understand. Just want to clarify my statement that AMC needs to come thru the
leadership channels, means they need to send thru myself or I before tasking or getting
response directly from the sme's. I understand that you were involved w the congr adds in
08/09 while serving as the Deputy for G8. Just want to make sure that AMC isn't misrouting
request for info or taskers and would have sent to you anyways knowing that you were involved
before but I need to know what our position is before we launch to AMC in case Mr. Boddorf or
sr leadership calls me directly on status. Thx vr Jerry

-----Original Message-----
From: Abbott, Sheila Ms CIV USA AMC
Sent: Tuesday, October 13, 2009 2:42 PM
To: Schay, Cara Ms CIV USA AMC; DeLaCruz, Jerry D CIV USA AMC; Abney, Laura M CIV USA AMC
Subject: RE: Tri-cons & Quad-cons (earmark due-outs) - ASST Sec Army FMC

GOT IT

-----Original Message-----
From: Schay, Cara Ms CIV USA AMC
Sent: Tuesday, October 13, 2009 1:22 PM
To: Abbott, Sheila Ms CIV USA AMC; DeLaCruz, Jerry D CIV USA AMC; Abney, Laura M CIV USA AMC
Subject: FW: Tri-cons & Quad-cons (due-outs) - ASST Sec Army FMC
Importance: High

Sheila...need to make sure Jerry understands the background on this and that we read Diane in
on the status all the way.

Cara

-----Original Message-----
From: Burkhalter, Michael D Mr CIV USA AMC
Sent: Tuesday, October 13, 2009 1:18 PM
To: Szymanski, Kathryn SES CIV USA; Loehrl, James SES CIV USA AMC; DeLaCruz, Jerry D CIV USA
AMC



GOVERNMENT
EXHIBIT

41

12-cv-4117



DEF 000892

Cc: Hutchison, Michael R CIV USA AMC; Schay, Cora Ms CIV USA AMC; Carlson, Daniel CIV USA AMC; Theis, Linda Ms CIV USA AMC; Clas, Anthony CPT MIL USA TRADOC; LaVeshie, Paul Mr CIV USA AMC
Subject: Tri-cons & Quad-cons (earmark due-outs) - ASST Sec Army FMC
Importance: High

Ma'am/Sir;

Just received the below questions from Asst. Sec. Army FMC office ref. Tricons/Quadcons purchased by ASC. We went through a similar drill back in Dec/Jan time frame. (See attached) AMC has an internal meeting ref. this material tomorrow morning (time unknown). Questions are as follows:

--Why was this amount competed and awarded by Army Sustainment Command (ASC) where there was a limited need when the funding could have been better utilized by the Tank Automotive Command on the contract awarded to CMCI on 18 September?

--Why was the $1.2M Earmark from FY08 (not the FY09 Earmark) not awarded to CMCI when the funds were explicitly directed by both the Senate and the House?

Will stand by for your input/response...thank you for your time.

v/r

Michael D. Burkhalter
Headquarters,
U.S. Army Sustainment Command
Public Affairs Office
DSN 793-5692 COMM 309-782-5692

-----Original Message-----
From: Jang, Megan C CIV USA AMC
Sent: Tuesday, October 13, 2009 12:36 PM
To: Burkhalter, Michael D Mr CIV USA AMC
Subject: FW: Earmark Due-Outs (UNCLASSIFIED)

Classification: UNCLASSIFIED
Caveats: NONE


From: Stafford, Richard J LTC MIL USA ASA FMC
Sent: Tuesday, October 13, 2009 9:41 AM
To: Roman, Margie Ms CIV USA AMC
Cc: Stapel, Michael J Mr CIV USA ASA FMC; Holden, Veronica M Ms CIV USA ASA FMC
Subject: FW: Earmark Due-Outs (UNCLASSIFIED)

Classification: UNCLASSIFIED
Caveats: NONE

Margie,

Please see the additional RFI below on the TRICON/QUADCON. Please prepare a response to these questions.

Thank you,

DEF 000893

Rick Stafford
LTC, Deputy Chief Current Opns Div
SAFM-BUO-C
703-693-2845
ARMY STRONG!

-----Original Message-----
From: Miller, Eric W MAJ MIL USA ASA FMC
Sent: Tuesday, October 13, 2009 9:27 AM
To: Stafford, Richard J LTC MIL USA ASA FMC
Subject: Earmark Due-Outs (UNCLASSIFIED)

Classification: UNCLASSIFIED
Caveats: NONE

LTC Stafford -

Got pinged today on the following due outs:

TRICON/QUADCON:

--Why was this amount competed and awarded by Army Sustainment Command (ASC) where there was a limited need when the funding could have been better utilized by the Tank Automotive Command on the contract awarded to CMCI on 18 September?

--Why was the $1.2M Earmark from FY08 (not the FY09 Earmark) not awarded to CMCI when the funds were explicitly directed by both the Senate and the House?

Classification: UNCLASSIFIED
Caveats: NONE


Classification:   UNCLASSIFIED
Caveats: NONE

Classification:   UNCLASSIFIED
Caveats: NONE

Classification:   UNCLASSIFIED
Caveats: NONE

Classification:   UNCLASSIFIED
Caveats: NONE

**Coffman, James M CIV USARMY ASC (US)**

| | |
|---|---|
| From: | Handy, Gerald P Mr CIV USA IMCOM |
| Sent: | Friday, April 09, 2010 9:33 AM |
| To: | Coffman, James M CIV USA AMC |
| Cc: | Marshall, Rachel C Ms CIV USA IMCOM |
| Subject: | RE: G-8 Chiefs |

Thank you Sir

V/R,
Gerry Handy
Complaints Manager
Rock Island Arsenal EEO
309.782.1488

FOR OFFICIAL USE ONLY - This email and any attachments may contain information that is protected from disclosure by Federal law (the Privacy Act of 1974) and should be viewed only by those with an official "need to know." If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of the content of this information is prohibited. If you have received this communication in error, please notify me immediately by e-mail, delete the original message, and destroy any hard copies you may have created. Any misuse or unauthorized disclosure may result in both civil and criminal penalties.

-----Original Message-----
From: Coffman, James M CIV USA AMC
Sent: Friday, April 09, 2010 9:28 AM
To: Handy, Gerald P Mr CIV USA IMCOM
Subject: Re: G-8 Chiefs

Thxs...my staff is working a meeting with them now. I talked to Mr. DeLaCruz and we are going to meet separately, but there is a plan.
Jim

------ Original Message ------
From: Handy, Gerald P Mr CIV USA IMCOM
To: Coffman, James M CIV USA AMC
Cc: Marshall, Rachel C Ms CIV USA IMCOM
Sent: Fri Apr 09 07:28:29 2010
Subject: G-8 Chiefs

Good Morning Mr. Coffman,

I just received a call from Sheila, she feels that the Command Group is not "protecting them" and is doing nothing to resolve their issues. I told her that if they wanted to file a complaint, they could certainly do that, and that they need to make a decision on how they want to proceed, however I recommended that they get on your calendar and let the command group try to resolve it, however you see fit.

She is hell-bent on a 15-6 being conducted, and stated that they do not have to "put up with this."

I believe it may give them SOME satisfaction to know what the plan of action is going to be.

1



GOVERNMENT
EXHIBIT
42
12-cv-4117

DEF 000967

**Coffman, James M CIV USARMY ASC (US)**

| | |
|---|---|
| **From:** | Herrera, Norbert Mr CIV USA AMC |
| **Sent:** | Friday, April 16, 2010 11:16 AM |
| **To:** | Coffman, James M CIV USA AMC; Tawney, Sonya CIV USA AMC |
| **Cc:** | Kellogg, Steven Mr CIV USA AMC |
| **Subject:** | RE: Script |
| | |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

Jim,
Sonya and I are on your calendar for Tue to go over the Parking paper and G-8 script. Also, working with EEO on getting a mediator. The EEO Office has access to mediators from outside this command/installation, which is probably best to have someone that isn't familiar with any of the parties.
Norbert

-----Original Message-----
From: Coffman, James M CIV USA AMC
Sent: Friday, April 16, 2010 8:14 AM
To: Tawney, Sonya CIV USA AMC; Herrera, Norbert Mr CIV USA AMC
Cc: Kellogg, Steven Mr CIV USA AMC
Subject: Script

Have you all had a chance to work on the script for the G8 meeting?  We can meet to discuss.  Also are you working the outside mediator?
Thxs


Jim Coffman
Army Sustainment Command (AMSAS-CS)
Acting Chief of Staff
COM: 309-782-6511
DSN: 793-6511
Mobile: 309-749-8937
jim.m.coffman@us.army.mil
SIPR: coffmanj@LADC-ROCK4.army.smil.mil

GOVERNMENT
EXHIBIT
43
12-cv-4117

1

28 Jul 11

MEMORANDUM FOR RECORD

SUBJECT: G8 Working Relationships and Resiliency

Mr. De La Cruz met with G8 Division Chiefs and/or their representatives on 28 Jul 11 and discussed the need to maintain congeniality and professional coordination during disagreements/discussions and to keep them internal in the office and not in public view.   Further discussed need to prepare workforce to impending changes within the organization structure and or workload and that they should remain flexible.  They should consider effects of changes and understand these difficult times and that we need to care for soldiers and civilians.  Watch employees to ensure they are handling the changes and help them with the transition.  Ensure they have the tools for resiliency provided in  resiliency

Stephanie Bloom
ASC Resource Management
Staff Action Officer

GOVERNMENT
EXHIBIT
47
12-cv-4117

**RM Staff Meetings/Huddles**
    7-Jan-10 Cancelled due to Cdrs' Conf pre-brief
    22-Jan-10
    16-Feb-10
    1-Mar-10
    30-Mar-10 Cancelled due to AMC Update
    1-Apr-10 Cancelled due to CG Meeting


**G8/S8 Synch**
    14-Jan-10
    28-Jan-10
    25-Feb-10
    11-Mar-10 Cancelled
    25-Mar-10
    22-Apr-10
    20-May-10
    17-Jun-10
    1-Jul-10
    15-Jul-10
    29-Jul-10
    12-Aug-10
    2-Sep-10
    9-Sep-10
    16-Sep-10
    23-Sep-10
    7-Oct-10
    10-Nov-10
    2-Dec-10


**G8 Quarterly Town Hall**
    11-Mar-10
    19-Apr-10
    13-Sep-10
    7 Dec 10 Planned

GOVERNMENT
EXHIBIT
48
12-cv-4117

DEF 000982

Memorandum for Record                                    23 Feb 2012

Last month, on 23 Feb 2012, I was asked by BG Harvey to attend a 0900 CDT FORSCOM
VTC regarding DOLs which conflicted w attending the Cmd and Staff meeting that
morning.  I called back to the office and notified the secretary, Ms. Judy
Leffler to let Sheila know that I needed her to cover down on the cmd and staff
mtg and I also provided specific topics to cover w the staff.  I was later
informed when I returned that Stephanie had heard Sheila reacting disgruntled,
slammed things around in her office when she was told to attend the meeting for
me.

                              Jerry D. De La Cruz
                              Jerry De La Cruz

GOVERNMENT
EXHIBIT
49
12-cv-4117

                                                          DEF 000984

**De La Cruz, Jerry D Jr USA CIV (US)**

Sheila attends Cmd and Staff w CG, Chief of Staff mtgs and Cdr Update Briefs to 4 star CG in my absence....also attends SVTC w Cdrs and CG, Ops Intel w staff and CG. Also attends briefings to congress, special guest, GOs, in my absence to represent the G8.

Jerry D. De La Cruz, Jr.
Army Sustainment Command (AMSAS-RM)
G8, Deputy Chief of Staff for Resource Management
COM: 309-782-0702
DSN: 793-0702
Mobile: 309-716-5067
jerry.delacruz.civ@mail.mil
SIPR: delacruzj@LADC-ROCK4.smil.mil

1

GOVERNMENT
EXHIBIT
50
12-cv-4117

DEF 000986

**De La Cruz, Jerry D Jr USA CIV (US)**

Signed By:          jerry.delacruz@us.army.mil

On 26 May, Ms. Abbott approached me and asked me to ask Stephanie Bloom is she would consider being the temp GS14 for RMA because she did not want Jesse Ivy to be the chief because he was not capable.

On 24 May, I was advised by the Omsbudsman G1, that Ms. Abbott was coaching Ms. April Scott to file a second step grieveance based on my mgt decision and negotiated agreement w the union regarding Ms. Aprils complaint. This agreement by management was provided to Ms. Abbott following my signing and approval.

Jerry D. De La Cruz, Jr.
Army Sustainment Command (AMSAS-RM)
G8, Deputy Chief of Staff for Resource Management
COM: 309-782-0702
DSN: 793-0702
Mobile: 309-716-5067
jerry.delacruz.civ@mail.mil
SIPR: delacruzj@LADC-ROCK4.smil.mil

1

GOVERNMENT
EXHIBIT
51
12-cv-4117

DEF 000983

| Department of the Army | ASC Regulation 690-12 |
|---|---|
| Headquarters, U.S. Army | |
| Army Sustainment Command | |
| 1 Rock Island Arsenal | |
| Rock Island, IL 61299-6500 | 8 Jun 07 |

Civilian Personnel

## FILLING GENERAL SCHEDULE (GS) POSITIONS

**Applicability.** This regulation applies to all US Army Sustainment Command (ASC) organizations and installations. Further, it applies to all general schedule (GS) positions; it does not apply to non-GS positions (i.e. Wage Grade (WG), Wage Leader (WL), or Wage Supervisor (WS), or positions within the National Security Personnel System (NSPS)).

**Decentralized printing.** Local reproduction of this regulation is authorized.

**Supplementation.** Supplementation of this regulation is authorized.

**Proponent.** The proponent is the Asst Chief of Staff for Human Resource Management, G-1. Users may send recommendations to HQ ASC (AMSAS-HRC), 1 Rock Island Arsenal, Rock Island, IL 61299-6500, e-mail rock-amsas-hrc@conus.army.mil.

**Distribution.** Approved for electronic distribution from the ASC Pubs Web page (http://www.aschq.army.mil/im/rcdsmgt/pubs.htm).

**Supersession notice.** None.

FOR THE COMMANDER:

DIANA L. BALMER
Chief of Staff

| Contents | Paragraph | Page |
|---|---|---|
| Purpose | 1 | 2 |
| Terms | 2 | 2 |
| Policy | 3 | 4 |
| Procedures | 4 | 4 |
| Outreach for High-Grade Positions | 5 | 7 |
| Recordkeeping | 6 | 7 |
| Appendix A.  Developing Rating Criteria | | 8 |
| Appendix B.  Evaluation & Interview Matrices | | 9 |
| Appendix C.  Interviews | | 11 |
| Appendix D.  Justification for Selection | | 16 |
| Appendix E.  Outreach Requirements | | 17 |


GOVERNMENT EXHIBIT
52
12-cv-4117

DEF 000223

1.  Purpose.  Provide policy, procedures, and guidance to all ASC organizations and installations for filling GS positions within the ASC.  This regulation applies to all GS selection actions; it does not apply to non-GS positions (i.e. Wage Grade (WG), Wage Leader (WL), or Wage Supervisor (WS), or positions impacted by implementation of the National Security Personnel System (NSPS)).  This guidance is provided for your use IAW existing local regulations and policies, and is subject to impact and implementation bargaining with local unions.

2.  Terms.  (Table 1 at the end of this paragraph identifies designation of responsible officials for recruitment and selection for GS-15 and below positions).

   a.  *Selections*.  For purposes of this regulation:

      (1)  All permanent GS positions at HQ ASC, at all grade levels.

      (2)  Permanent GS-11 and above (target grade) positions at ASC subordinate installations.

      (3)  Temporary GS-14 and above positions throughout HQ ASC.

      (4)  All competitive temporary fills at HQ ASC, at all grade levels, when the position duration exceeds 120 days.

      (5)  Competitive temporary GS-11 and above positions at ASC subordinate installations when the position duration exceeds 120 days.

   b.  *Selecting Official*.  The first-line leader/supervisor of the position being filled.

   c.  *Reviewing Official*.  The second-line leader/supervisor of the position being filled.  This is normally the senior rater of the position.

   d.  *Approving Official*.  The individual authorized by this policy to make the final decision on selection.  The approving official assures that the selected candidate is the best available, and the process has maintained integrity and is fully within the spirit, intent, and mandates of this policy.

      (1)  The Deputy to the Commander (DC), ASC, is the approving official for all selections and reassignments at the GS-14 and GS-15 level throughout the command.  Any GS-14 or GS-15 position requiring Higher Headquarters (HHQ) approval (i.e., civilian attorney positions) will obtain ASC DC approval prior to forwarding to HHQ.

2

DEF 000224

(2)   For selections below GS-14 within HQ ASC, the G-Staffs or Senior Executive System (SES) members are approving officials for their organizations and the Chief of Staff for command staff.  Should the Chief of Staff, SES members, or G-Staffs be the selecting official, the approver will be the next higher person in the rating chain (this person will also be the reviewer).

(3)   For installations other than the HQ ASC, the commander/activity head will be the approving official for selections below GS-14 (in some cases, the commander may be the reviewing and approving official).  Commanders/activity heads may delegate this approval to the next lowest level.

e.   *Selection Panel Membership.*  The panel evaluates and recommends selections based on approved evaluation criteria and interviews.  For all selections below GS-15, the selection panel members will be at or above the grade of the position to be filled (target grade) and will include a diverse panel consisting of 3 panel members that include at least a minority, non-minority, female member, and male member.  At least one of these panel members must be a subject matter expert.  For GS-15 positions, the panel members will be GS-15 or above and will include a diverse panel to include at least a minority, non-minority, female member, and male member.  At least one of these panel members must be a subject matter expert.  The selection panel will not include the selecting, reviewing, or approving official.  Panels are mandatory under this policy for all selections identified in paragraph 2a.

f.   *Non-Competitive Temporary Action.*  For purposes of this regulation, any temporary action that does not exceed, in total, 120 days.

| POSITION | PANEL COMPOSITION (MIN OF 3) | SELECTING OFFICIAL | REVIEWING OFFICIAL | APPROVING OFFICIAL |
|---|---|---|---|---|
| HQ ASC GS-15 | GS-15 & ABOVE, INCL 1 FEMALE, MALE, MINORITY, & NON-MINORITY (INCL SME) | 1ST LINE SUPV | 2ND LINE SUPV | ASC DC |
| HQ ASC GS-14 | GS-14 & ABOVE, INCL 1 FEMALE, MALE, MINORITY, & NON-MINORITY (INCL SME) | 1ST LINE SUPV | 2ND LINE SUPV | ASC DC |
| HQ ASC ALL GS GRADES BELOW GS-14 (TARGET GRADE) | GRADE EQUAL TO TARGET GRADE OR ABOVE, INCL 1 FEMALE, MALE, MINORITY, & NON-MINORITY(INCL SME) | 1ST LINE SUPV | 2ND LINE SUPV | G-STAFF, SES, OR ASC CHIEF OF STAFF |
| ACTIVITY GS-15 & GS-14 CEA | GS-15 & ABOVE, INCL 1 FEMALE, MALE, MINORITY, & NON-MINORITY(INCL SME) | COMMANDER | COMMANDER | ASC DC |
| ACTIVITY GS-14 | GS-14 & ABOVE, INCL 1 FEMALE, MALE, MINORITY, & NON-MINORITY(INCL SME) | 1ST LINE SUPV | COMMANDER | ASC DC |
| ACTIVITY GS-11 THRU 13 (TARGET GRADE) | GRADE EQUAL TO TARGET GRADE OR ABOVE, INCL 1 FEMALE, MALE,  MINORITY, & NON-MINORITY (INCL SME) | 1ST LINE SUPV | 2ND LINE SUPV OR COMMANDER | COMMANDER OR DELEGATED |

Table 1.   Designation of Responsible Officials for Recruitment & Selection for GS-15 & Below

3

DEF 000225

3. <u>Policy</u>. The selection of leaders within this command is a task of extraordinary importance. It not only perpetuates the values of the command, but also provides the very foundation of the future. Therefore, it is ASC policy that all selections within ASC be made in a fair and equitable manner. The intent is to select the best qualified candidate for present and future leader positions. The ASC DC will personally be the approving official for all selections, temporary or permanent, at the GS-14 and above level. There will be no exceptions to this policy without explicit and written approval from the DC. All leaders and supervisors are expected to comply with all requirements herein.

4. <u>Procedures</u>.

   a. No leader/supervisor may initiate any personnel action on any GS-15 or GS-14 positions without prior approval of the ASC DC. Evaluation criteria and interview questions are required prior to the submission of the recruitment action for DC approval. For HQ ASC, the requesting organization will coordinate with G-1, AMSAS-HRC; for subordinate installations, the requesting organization will submit their request for approval directly to the HQ ASC G-1, AMSAS-HRC, prior to submission to their servicing Civilian Personnel Advisory Center (CPAC).

   b. The selecting official will develop the evaluation criteria and interview questions.

      (1) All positions in HQ ASC (not subordinate activities) will be required to submit completed rating and ranking criteria and interview questions prior to the submission of the recruitment action for G1 review and approval. The recruitment action will not be released for vacancy announcement until the rating and ranking criteria and interview questions are reviewed and approved by G-1. This applies to all GS grade levels at HQ ASC.

      (2) To ensure the selection process for positions at grades GS-14 and GS-15 fully account for leadership and diversity skills, the G-1 Civilian Personnel Division (AMSAS-HRC) will review the criteria to assure the proper aspects are included. For all supervisory positions and all GS-14 and above positions, criteria and interview questions will include leadership skills, abilities, and attributes. EEO experience and training are only required as a part of the interview questions.

4

(3)  Appendix A provides guidance for developing the evaluation criteria.  The ASC G-1, AMSAS-HRC, can provide additional assistance upon request.

c.  The approving official will approve the selecting official's criteria and interview questions prior to submitting criteria and questions to the G-1, as described in para b above.

d.  The selecting official, with reviewing official approval, will select a diverse panel consisting of 3 panel members that include at least a minority, non-minority, female member, and male member.  The selection panel members will be at or above the grade of the position to be filled (target grade). At least one of these panel members must be a subject matter expert.

e.  The selection panel will convene for the purpose of evaluating all candidates on the referral list.  Each panel member using the approval criteria will rate each candidate's resume separately and independently.  Panel members will record their evaluation on a matrix similar to the example located at Appendix B.  The selection panel may reduce the numbers of candidates scheduled for interview based on this initial evaluation and IAW paragraph 4h.  Each permanent selection, as identified in paragraph 2a, will include an interview phase. The final ranking of the candidates will include an evaluation of the resume and the interview score.  All will be documented on a matrix.  Interviews will be via telephone or video teleconference (VTC) for off-site candidates.'  The interview process shall not receive more than 50 percent of the total final evaluation results.  Appendix C provides further guidance.

f.  All ASC leaders need to understand the importance placed on integrity to systems and processes.  As such, all selecting officials and members of selecting panels must certify their involvement in the selection process for all GS-14 and GS-15 positions.  Leaders are expected to adhere to the highest standards in the selection process.  All GS-14 and GS-15 selection packages will contain the following statement signed by all involved in the selection, review, and administrative processing of these actions to include panel members:

"I certify that I have not divulged the content of any rating or interview instruments nor names of candidates or the selectee in the selection process for the position of _____.  This recruitment action has followed ASC Reg 690-12 and there have been no compromises in the process. Signed:_____Date:_____".

5

C1, ASCR 690-12                                    15 Sep 08

    g.  The selection panel members will make a final selection
recommendation to the selecting official.  Normally, the
selecting official will select the candidate with the highest
combined score.  This element of the selection process must be
as objective as possible, however, the selecting official may
select a different candidate; in doing so, a strong and
compelling job-related justification must be prepared and the
selecting official must get approval from the reviewing official
prior to submission for approval.  The approving official, as
outlined in paragraph 2d, will approve or disapprove the
selection based on job-related criteria.  Appendix D provides an
example of the selection statement format.  In all GS-14 and GS-
15 selections where the selecting official selects other than
the top-scoring candidate, the ASC DC will meet with the
official as part of the review process for decision. For all HQ
ASC GS-13 and below selections where the selecting official
selects other than the top-scoring candidate, the ASC Chief of
Staff will meet with the official as a part of the review
process for decision.

    h.  This paragraph applies only to positions for which
bargaining rights exist for AFGE Local 15.  As agreed to during
mid-contract bargaining on 20 Jun 03, the following provisions
apply to HQ ASC positions only:

        (1)  In the event that less than ten candidates are
referred as qualified for one vacancy, all candidates will be
interviewed.

        (2)  If there are 10 or more candidates referred as
qualified for one vacancy and there is a clear and obvious break
of more than five points, the panel may narrow down the list for
interviews to at least 10 qualified candidates above the break.
When no such clear break exists, the panel will average the
scores of the referred candidates, referring only those above
the average for interviews.  The panel may, of course, determine
to interview all candidates.

        (3)  In situations where the referral list is so large
that neither of these methods will result in a manageable number
of candidates for interviews, the panel will reduce the number
of candidates for interviews to 15, as follows.  If more than 20
candidates are qualified and referred, the panel will use a
predetermined job-related screen out factor to narrow the list
to a total of 15 candidates referred for interviews.  If this
method results in a tie that may refer more than 15 candidates,
all of those tied will be referred with the list of 15.  In the
event that this method still produces an unmanageable list of
over 20 candidates, a second job-related screen out element will
be chosen.  The process will continue until such time as it is

                                6

determined that none of these methods will produce a list of less than 20 candidates for interview.

5. _Outreach for High-Grade Positions_. Both the Department of the Army and Army Materiel Command (AMC) require outreach to fill GS-15 positions. Neither this headquarters nor HQ AMC can waive this requirement. Appropriate outreach efforts assure the consideration of qualified minorities and women in the selection process. Within ASC, the outreach requirement will extend to GS-14, Civilian Executive Assistant (CEA) positions. Appendix E provides detailed outreach requirements.

6. _Recordkeeping_.

a. The selection panel will submit one complete copy of all documents to the organization issuing the referral (to HQ ASC G-1, AMSAS-HRC) for HQ positions and to the servicing CPAC for subordinate activity positions.

b. The organization issuing the referral, the organization requesting the position, or the servicing ASC CPAC, as appropriate, will send a complete copy, following local EEO review, of all documents for positions requiring ASC DC approval to HQ ASC, ATTN: G-1 AMSAS-HRC, 1 Rock Island Arsenal, Rock Island, IL 61299-6500.

c. In no case will any member of the selection panel or review process disclose any panel deliberations or recommendations prior to appropriate approval levels and final acceptance by the selectee of the job offer.

d. The organization issuing the referral, the organization requesting the position, or the servicing CPAC, as appropriate, will keep on file, at a minimum, the following records:

o Vacancy announcement
o All applications
o Issued referral list(s) from CPOC
o Outreach plan for all GS-15s and GS-14 CEA positions
o Evaluation criteria
o Interview questions
o Panel member composition with Race/National Origin breakout
o Matrix of scores of each panel member
o Combined matrix of all panel members
o Recommended selectee with selection statement
o Justification for selection of other than top-rated candidate
o Signed statement by EEO official indicating selection review

7

DEF 000229

Appendix A

RATING CRITERIA

1.  The Office of Personnel Management establishes minimum educational requirements for Federal government positions. Within the Department of Defense and Department of the Army, additional training and educational requirements are included in career program guidance, and the Army Acquisition Corps certification criteria.  Consider recent education, training, and experience when filling positions where technological, legal, and regulatory changes are frequent.  Gear training and education requirements for managerial supervisory positions more toward leadership rather than technical areas.

2.  When evaluating training, experience, and education, determine how well these areas prepared the candidate for the position.  Evaluate the type and quality of training, experience, and education the candidate has relative to the requirements of the position to be filled.

3.  Use of purely quantitative factors, such as length of experience or amount of education, may be granted if there is a relationship to quality of performance.  Points should not be given for a degree in and of itself, but, rather, for how it relates to the position being filled.  Unless there is evidence that a specific amount of education or training or a specific length of experience produces the required knowledge, abilities, or skills (and any lesser amount does not), it is not appropriate to use length or amount of experience as a criterion factor.  (This does not rule out using length of service or length of experience as a tiebreaker, if provided for in the merit placement plan or in the negotiated agreement.)

8

DEF 000230

Appendix B

## EVALUATION AND INTERVIEW MATRICES

### RESUME SCORING MATRIX (EXAMPLE)

| PANEL MEMBER | ELEMENT #1 | ELEMENT #2 | ELEMENT #3 | ELEMENT #4 | ELEMENT #5 | TOTAL SCORE |
|---|---|---|---|---|---|---|
| CANDIDATE 1 | | | | | | |
| CANDIDATE 2 | | | | | | |
| CANDIDATE 3 | | | | | | |
| CANDIDATE 4 | | | | | | |
| CANDIDATE 5 | | | | | | |
| CANDIDATE 6 | | | | | | |
| CANDIDATE 7 | | | | | | |
| CANDIDATE 8 | | | | | | |
| CANDIDATE 9 | | | | | | |
| CANDIDATE 10 | | | | | | |

### TOTAL RESUME SCORING MATRIX (EXAMPLE)

| | PANEL MEMBER 1 | PANEL MEMBER 2 | PANEL MEMBER 3 | TOTAL SCORE |
|---|---|---|---|---|
| CANDIDATE 1 | | | | |
| CANDIDATE 2 | | | | |
| CANDIDATE 3 | | | | |
| CANDIDATE 4 | | | | |
| CANDIDATE 5 | | | | |
| CANDIDATE 6 | | | | |
| CANDIDATE 7 | | | | |
| CANDIDATE 8 | | | | |
| CANDIDATE 9 | | | | |
| CANDIDATE 10 | | | | |

### INTERVIEW SCORING MATRIX (EXAMPLE)

| PANEL MEMBER | QUESTION #1 | QUESTION #2 | QUESTION #3 | QUESTION #4 | QUESTION #5 | TOTAL SCORE |
|---|---|---|---|---|---|---|
| CANDIDATE 1 | | | | | | |
| CANDIDATE 2 | | | | | | |
| CANDIDATE 3 | | | | | | |
| CANDIDATE 4 | | | | | | |

9

DEF 000231

Appendix B (cont)

**TOTAL INTERVIEW SCORING MATRIX (EXAMPLE)**

| | PANEL MEMBER 1 | PANEL MEMBER 2 | PANEL MEMBER 3 | TOTAL SCORE |
|---|---|---|---|---|
| CANDIDATE 1 | | | | |
| CANDIDATE 2 | | | | |
| CANDIDATE 3 | | | | |
| CANDIDATE 4 | | | | |

**TOTAL PANEL SCORING MATRIX (EXAMPLE)**

| | PANEL MEMBER 1 | | PANEL MEMBER 2 | | PANEL MEMBER 3 | | TOTAL SCORE |
|---|---|---|---|---|---|---|---|
| | RESUME | INTERVIEW | RESUME | INTERVIEW | RESUME | INTERVIEW | |
| CANDIDATE 1 | | | | | | | |
| CANDIDATE 2 | | | | | | | |
| CANDIDATE 3 | | | | | | | |
| CANDIDATE 4 | | | | | | | |

10

DEF 000232

Appendix C

INTERVIEWS

INTERVIEW QUESTIONS:

1.  It is a mandatory requirement to interview all the highly
qualified candidates who remain on the referral list if initial
screening, based on merit factors, results in removal of some
candidates from further consideration.

2.  Each panel member will be designated a question or two to
ask.  The same person in the same order will ask each question
for each of the candidates.  Panel members will not deviate from
the set of questions UNLESS it is a follow-on question to the
original question in order to clarify a response from the
candidate.

3.  Panel members may interview candidates located off-site by
telephone or VTC.

4.  Do not give interview results undue weight in determining
the best-qualified candidate.  Rather, combine the results of
other information to determine a candidate's final position
relative to other competitors.  The interview process shall not
constitute more than 50% of the total final ranking.

5.  Document all interview proceedings.

INAPPROPRIATE INTERVIEW QUESTIONS:

1. Interview questions should be concerned with the experience,
training, skills, etc. These answers should provide evidence of
whether the candidate possesses job-related knowledge, skills or
abilities (KSA) you are looking for.  For example, you may
examine the KSA of "ability to give oral presentations to large
groups" in the interview.  A good interview question might be:
"What experience have you had in giving oral presentations to
large groups?"  In the questioning, you could ask what the size
of the group addressed was, if audiences addressed were hostile,
and to what extent the candidate participated in preparing the
presentation.  This type of question is objective; it does not
"lead" the candidate to an answer.  Rather, it seeks to find
enough information for you to make a decision from and it's job
related.  Incorrect questions for this KSA would be:  "Do you
have trouble speaking before large groups?", "Can you speak
well?"

11

DEF 000233

# G-8

**MISSION:** Identify, acquire, budget, distribute, track and control ASC command resources



**Deputy Chief of Staff Resource Management**

Jerry DeLa Cruz

**Asst. Deputy Chief of Staff Resource Management**

- Enterprise Financial Systems Division
- POM Future Division
- Financial Operations Division (Policy & Accounting)
- Mission Operations Division

GOVERNMENT EXHIBIT

58

12-cv-4117

**Stephen Fieweger**

| | |
|---|---|
| **From:** | Booth, Stacy (USAILC) <Stacy.Booth@usdoj.gov> |
| **Sent:** | Monday, December 07, 2015 10:04 AM |
| **To:** | Stephen Fieweger |
| **Cc:** | mmacomber@tullylegal.com; Frooman, Hilary (USAILC) |
| **Subject:** | Additional Langfeldt Abbott Discovery |
| **Attachments:** | DEFENDANT DISCOVERY NUMBERED 929-937.pdf |

Attached is additional discovery numbered 929 to 937.  Please contact Hilary
should you hae any questions.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
Stacy M. Booth, Paralegal Specialist
U.S. Attorney's Office
318 S. Sixth Street
Springfield, IL 62701
Email: stacy.booth@usdoj.gov
Phone:  (217) 492-4450
Fax:  (217) 492-4888





EXHIBIT

*B*

84

1      Q.    When you say scream, was it in a very loud

2   voice?

3      A.    Yes.

4      Q.    Did he point a finger at you?

5      A.    Well, it was speakerphone.

6      Q.    Was it offensive to you, or how is that

7   described?

8      A.    It was on speakerphone.

9      Q.    Speakerphone.

10      A.    So there was no visual.  I couldn't see

11   him.  It was screaming.  Don't go outside your lane,

12   and, I don't know why you engaged in this and --

13   yeah.  But I had been given the task by his deputy

14   Cara Schay to move out on it right away.

15      Q.    Okay.  You described Mr. DeLaCruz used

16   derogatory and condescending language toward you?

17      A.    Uh-huh (affirmative response).

18      Q.    Describe what you mean by derogatory and

19   condescending language.  Give examples of what he

20   used.

21      A.    Well, I gave the one example of when I was

22   not allowed to talk to Mr. Boddorf.  The F-word was

23   used.  His language was always, That's not what I

24   asked for.  It was demeaning and degrading and



EXHIBIT

C

tabbies®

DEF 000401

85

1    condescending.  It was, That's not what I asked for.

2    That's not what we're talking about right now.  Hey,

3    Mr. Gitchel, what do you think about this?  Hey, Tim,

4    what do you think about this?

5              Then I would say the exact same thing

6    again, and he would say, That's not what I asked for,

7    and turn his back on me.  I didn't ask for your

8    opinion right now, and go right to Mr. Gitchel.

9    Mr. Gitchel would paraphrase what I said, because

10   usually I knew more about the subject.  That's from

11   years of experience.  And he would say, Thanks, Tim.

12   That's exactly what I was looking for.  That happened

13   all the time till the point I got to where I just

14   quit engaging.  I just -- it was easier not to take

15   the demeaning and intimidating and condescending

16   words.  I just --

17        Q.    Are you aware of Mr. DeLaCruz ever

18   screaming or using derogatory and condescending

19   language to anyone else in the workplace?

20        A.    In some of these instances I mentioned,

21   there were, in fact, other people in the room.

22        Q.    Such as?

23        A.    Mr. Gitchel, Ms. Abney, Ms. Schay, and

24   they're noted in their witness statements as well.

DEF 000402

**DeLaCruz, Jerry D CIV USA AMC**

| | |
|---|---|
| **From:** | DeLaCruz, Jerry D CIV USA AMC |
| **Sent:** | Tuesday, November 23, 2010 11:08 AM |
| **To:** | Abbott, Sheila Ms CIV USA AMC; Abney, Laura M CIV USA AMC; Allen, Troy Mr CIV USA AMC; Arguello, Frank Mr CIV USA AMC; Aude, Bruce E Mr CIV USA AMC; Ausborn, Carmen A CIV USA IMCOM; Barnet, Rose CIV USA AMC; Barth, Greg CIV USA AMC; Beaudry, Benjamin T Mr CIV USA AMC; Bloom, Stephanie Ms CIV USA AMC; Buffington, Robyn M Mrs CIV USA AMC; Canada, Sandra Mrs CIV USA AMC; Cewe, Brian J CIV USA AMC; Cooper, Brandon M Mr CIV USA AMC; Cramond, Keri L CIV USA AMC; Davis, Scott CIV USA AMC; DeBisschop, Deanna M CIV USA; DeLaCruz, Jerry D CIV USA AMC; DeMarlie, Kristin Ms CIV USA AMC; Derby, Stephanie L CIV US USA; DeVolder, Adelle N CIV USA; Dunlap, Jennifer M Miss CIV USA; Edwards, Bryan M CIV USA AMC; Essex, Ashley R Mrs CIV USA AMC; Flemming, Jacqueline N Ms CIV USA AMC; Flemming, Timothy Mr CIV USA AMC; Fore, Chelsea M CIV USA; Gainey, Bruce D Mr CIV USA AMC; Gatewood, Roxanne CIV USA AMC; Gitchel, Tim Mr CIV USA AMC; Gordon, Kimberly N CIV USA; Helms, Matthew B Mr CIV USA AMC; Ivy, Jesse CIV USA AMC; Jensen, Elizabeth A CIV USA; Jones, Kevin A Mr CIV USA AMC; Kruse, Kelly D CIV USA; Lawson, Janelle Ms CIV USA AMC; Leffler, Judith A Mrs CIV USA AMC; Leonard, Susan D CIV USA AMC; Lotz, Ann E CIV USA AMC; Matherly, Kurt T Mr CIV USA AMC; Meier, Peggy L CIV USA AMC; Menster, Martin T CIV USA AMC; Miller, Steven P Mr CIV USA; Moore, Ann Ms CIV USA AMC; Muskeyvalley, Joan CIV USA AMC; O'Malley, Debbie L Miss CIV USA AMC; Otero, Elysa E CIV USA; Peer, Lisa D Mrs CIV USA AMC; Peppers, Cannon P CIV USA AMC; Peterson, Meghan A Miss CIV USA AMC; Pineda, Camilo CIV USA; Poling, Aletha K Ms CIV USA AMC; Ralston, Kay CIV USA AMC; Remaly, Jason M Mr CIV USA AMC; Richardson, Catrina D CIV USA AMC; Rielly, Linda K CIV USA AMC; Ruiz, Valerie J Ms CIV USA AMC; Sanchez, Nora M Ms CIV USA AMC; Sawvell, Cheryl CIV USA AMC; Schou, Jennifer A Miss CIV USA AMC; Sharfe, Ruth J Mrs CIV USA AMC; Simons, Denise CIV USA AMC; Streeter, Brandon R CIV USA AMC; Theisen, Mark CIV USA AMC; Thomsen, Katrina Ms CIV USA; Thomsen, Richard S CIV USA; Thoren, Theresa M Ms CIV USA AMC; Vande Wiele, Jill Ms CIV USA AMC; VandeVoorde, Sandra J Ms CIV USA AMC; Washam, Ronald P Mr CIV USA AMC; Weber, Constance M CIV USA AMC; Widener, Tonya Ms CIV USA AMC; Williams, Tayonia CPT MIL USA; Zahniser, James A CIV USA AMC; Zeigler, Daphne M Mrs CIV US USA |
| **Cc:** | Dix, Richard COL MIL USA; Abbott, Sheila Ms CIV USA AMC; Abney, Laura M CIV USA AMC; Akers, Candy CIV USA IMCOM; Aude, Bruce E Mr CIV USA AMC; 'Ball, James'; Barnet, Rose CIV USA AMC; Barth, Greg CIV USA AMC; Beaudry, Benjamin T Mr CIV USA AMC; 'Blake, Darrin'; 'Blassingame, Marguerite'; Bloom, Stephanie Ms CIV USA AMC; Bommarito, Chien Mrs CIV USA; Bradley, Debra J CIV USA AMC; Brown, Teresa L CIV USA AMC; 'Buttelmann, Rik'; Pineda, Camilo CIV USA; 'Campbell, Renee'; Canada, Sandra Mrs CIV USA AMC; Causemaker, Susan M Ms CIV USA AMC; 'Cogswell, Howard'; Cooper, Brandon M Mr CIV USA AMC; Cramond, Keri L CIV USA AMC; Davis-Hoffman, Emily Ms CIV USA AMC; DeLaCruz, Jerry D CIV USA AMC; Dunlap, Jennifer M Miss CIV USA; Edwards, Sherry CIV USA AMC; Essex, Ashley R Mrs CIV USA AMC; Flemming, Jacqueline N Ms CIV USA AMC; Gatewood, Roxanne CIV USA AMC; Gitchel, Tim Mr CIV USA AMC; 'Harris, Yong'; Ivy, Jesse CIV USA AMC; Porter, Janet R Mrs CIV USA AMC; Kenyon, Thomas E CIV USA AMC; Kratzberg, Christina M CIV USA AMC; Leonard, Susan D CIV USA AMC; Marcello, Patricia CIV USA AMC; Marchan, Carlos D CIV USA; Marshall, Debbie L Ms CIV USA AMC; Marshall, Diana CIV USA AMC; Meier, Peggy L CIV USA AMC; Moore, Rose Mrs CIV USA; 'Nam, Mi C.'; Nevarez, Nancy M Ms CIV USA AMC; Newman, Deborah A CIV USA AMC; 'Nora Crawford'; Ormiston, Kim; Parmenter, Barbara L Mrs CIV USA AMC; Peterson, Meghan A Miss CIV USA AMC; Reed, Michael D Mr CIV USA AMC; Remaly, Jason M Mr CIV USA AMC; Richardson, Catrina D CIV USA AMC; Rielly, Linda K CIV USA AMC; Rossi, Patrizia; Rossi, Patrizia; Ruiz, Valerie J Ms CIV USA AMC; Sanchez, Nora M Ms CIV USA AMC; Sanders, Rick E Mr CIV USA AMC; 'Skinner, Cheryl R.'; Smith, Eric CIV USA; Strickland, Sharon L Ms CTR US USA MEDCOM MEDCMD; Thomsen, Richard S CIV USA; Williams, Tomesia Mrs CIV USA; Vande Wiele, Jill Ms CIV USA AMC; Williams, Tayonia CPT MIL USA; Woodward, Melony Mrs CIV USA ATEC; Rodriguez, Yanna CIV USA; Youtzy, Janet L CIV USA AMC |
| **Subject:** | Happy Thanksgiving |

1

ASC G8/S8 Team...All, I just wanted to say Happy Thanksgiving to you and all your Families. There are lots of goodness to be thankful for and I am thankful and proud for the opportunity to serve w selfless Civilians and Soldiers like you and this great ASC G8 Team.  Please take a few moments over the Holiday to think of all of our Soldiers, Civilians, and their Families that are deployed and defending the rights that we so freely enjoy! Please be safe and enjoy this special time with your Family and Friends, take care, thx vr Jerry

Jerry D. De La Cruz, Jr.
Army Sustainment Command (AMSAS-RM)
G8, Deputy Chief of Staff for Resource Management
COM: 309-782-0702
DSN: 793-0702
Mobile: 309-716-5067
jerry.delacruz@conus.army.mil
SIPR: delacruzj@LADC-ROCK4.smil.mil

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

SHEILA LANGFELDT-ABBOTT,          )
                                  )
        Plaintiff,                )          Civil Case No. 12-4117
                                  )
        v.                        )
                                  )
JOHN McHUGH, Secretary, Department )
of the Army,                      )
                                  )
        Defendant.                )

## DEFENDANT'S INITIAL DISCLOSURES

Defendant, John McHugh, through counsel, Gerard A. Brost, Assistant United

States Attorney for the Central District of Illinois pursuant to the Agreed Proposed

Discovery Plan approved by this Court on May 1, 2013, provides initial disclosures as

follows:

1.  Documents Bates numbered DEF 000001 - DEF 000869 are included with this

disclosure.

2.  The defendant believes those individuals identified in the attached documents



are persons who are likely to have discoverable information relevant to this case.

Respectfully submitted,

Defendant John McHugh

JAMES A. LEWIS
United States Attorney

By:    s/ Gerard A. Brost
        Gerard A. Brost, IL Bar 3125997
        Assistant United States Attorney
        United States Attorney's Office
        One Technology Plaza
        211 Fulton Street, Ste. 400
        Peoria, Illinois 61602
        Telephone:  (309) 671-7050
        Fax: (309) 671-7259
        Email:  gerard.brost@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that on May 15, 2013, the foregoing Defendant's Initial

Disclosures and documents Bates numbered DEF 000001 - DEF 000869 were sent to the

plaintiff's attorney, Stephen T. Fieweger, by Federal Express to:

KATZ HUNTOON & FIEWEGER, P.C.
1000 - 36th Avenue
Moline, Illinois 61266-0950

<u>s/Kelly Thompson</u>
Paralegal

**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION**

SHEILA LANGFELDT-ABBOTT,     )
                                )
    Plaintiff,            )     Civil Case No. 12-4117
                                )
   v.                 )
                                )
JOHN McHUGH, Secretary, Department   )
of the Army,                )
                                )
    Defendant.         )

## CERTIFICATE OF SERVICE OF INITIAL DISCLOSURES

I hereby certify that on May 15, 2013, pursuant to the Agreed Discovery Plan approved by this Court on May 1, 2013, the defendant's Initial Disclosures were sent by Federal Express to Stephen T. Feiweger, Attorney, KATZ, HUNTOON & FIEWEGER, P.C., 1000 - 36th Avenue, Moline, Illinois, 61265-7126.  Said disclosures consist of documents Bates numbered DEF 000001 - Def 000869.  I further certify that on May 15, 2013, defendant's counsel electronically filed this Certificate of Service with the Clerk of the Court using the CM/ECF system, which will send notification of the same to all parties of record.

                                        s/ Kelly Thompson
                                        Kelly Thompson, Paralegal

# IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
### ROCK ISLAND DIVISION

SHEILA LANGFELDT-ABBOTT,    )
    )
    Plaintiff,    )
    )
    v.    )    Civil Case No. 12-4117
    )
JOHN McHUGH, Secretary,    )
Department of the Army,    )
    )
    Defendant.    )

## DEFENDANT'S RESPONSES TO PLAINTIFF'S
## FIRST SET OF INTERROGATORIES

**1.   Please state the name, address, title or position with the United States Department of Army of each person who has personal knowledge of the facts which support the denial of plaintiff's allegations in paragraph 7 of her Complaint and for each such person please state the facts which support the denial of paragraph 7 of the Complaint.**

ANSWER:

1. Jerry D. DeLaCruz, Deputy Chief of Staff for Resource Management, US Army Sustainment Command, Rock Island, IL 61299.   Mr. DeLaCruz will have knowledge as to plaintiff's repeated failure to conduct herself in a professional manner in the workplace.

2. Lisa Peer, Supervisory Financial Management Specialist, US Army Sustainment Command, Rock Island, IL.   Ms. Peer will have knowledge as to plaintiff's repeated failure to conduct herself in a professional manner in the workplace.

3. Stephanie Bloom, Executive Officer, DCS, G8, US Army Sustainment Command, Rock Island, IL.   Ms. Bloom will have knowledge as to plaintiff's repeated failure to conduct herself in a professional manner in the workplace.



EXHIBIT
E

4. Sandra Canada, Supervisory Management Specialist, US Army Sustainment Command, Rock Island, IL.   Ms. Canada will have knowledge as to plaintiff's repeated failure to conduct herself in a professional manner in the workplace.

Investigation continues.

**2.    Please state the name, address and telephone number of each person who the defendant intends to call as a witness at trial that support the denial of the allegations of paragraph 9 of the Complaint.**

Objection:   Interrogatory requests attorney work product.

ANSWER: Notwithstanding the foregoing objection, defendant will provide its list of witnesses for trial in the pretrial statement as required under the Federal Rules of Civil Procedure and/or the Scheduling Order in this case.   Defendant has not made any decisions as to whom it will call as a witness at trial; however, it will likely be from the list of persons with relevant knowledge provided in these responses as well as those persons identified in defendant's and/or plaintiff's initial disclosures.

**3.    Please state the name, address and telephone number of each person who has personal knowledge of facts which would support the defendant's denial of paragraph 10 of the Complaint.**

ANSWER:   Paragraph 10 of plaintiff's complaint appears to allege as fact that Mr. DeLaCruz discriminated against and subjected plaintiff and "other older women" to a hostile work environment.   As this is factually incorrect, the paragraph was denied as stated.   Mr. DeLaCruz would have knowledge of the fact that he did not engage in such conduct.   See also response to Interrogatory No. 1.

**4.    Please state the name, address and telephone number of each person who has personal knowledge of facts which support defendant's denial of paragraph 13 of Count I of the Complaint.**

ANSWER:   Jerry DeLaCruz and Tim Gitchel.

**5.    Please state the name, address and telephone number of each person who has personal knowledge of the facts which support the defendant's denial of paragraph 14 of Count I of the Complaint.**

ANSWER:   Jerry DeLaCruz and Tim Gitchel.

6. **Please state the name, address and telephone number of each person the defendant intends to call as a witness at trial and the subject matter of their testimony.**

Objection:   Interrogatory requests attorney work product.

ANSWER: Notwithstanding the foregoing objection, defendant states that it will provide its list of witnesses for trial in the pretrial statement as required under the Federal Rules of Civil Procedure and the Scheduling Order in this case.   Defendant has not made any decisions as to whom it will call as a witness at trial; however, it will likely be from the list of persons with relevant knowledge provided in these responses as well as those identified in defendant's and/or plaintiff's initial disclosures.

7. **Please state all grievances or complaints filed by employees against Jerry DeLaCruz from January 1, 2000 through the present date.**

Objection: Overly broad as to time and subject matter.

ANSWER:   Notwithstanding the foregoing objection, defendant states that it is aware of five (5) EEO complaints filed in which Mr. DeLaCruz was named, three of the complaints were filed by plaintiff and two were filed by Laura Abney.   Defendant is also aware of a grievance filed by another employee; however, there was no allegation of age or gender discrimination in that grievance.   As such it is not relevant to the allegations in this case.

8. **Please state each and every fact which supported Jerry DeLaCruz's decision not to offer the permanent Assistant Deputy Chief of Staff for Resource Management G8 position to Sheila Langfeldt-Abbott in March 2010.**

Objection: The interrogatory assumes that there was an available Assistant G8 position to offer, which there was not.

ANSWER:   Further, notwithstanding the foregoing objection, defendant states Mr. DeLaCruz did not offer anyone the permanent Assistant G8 position in March 2010; therefore, there would be no reason to offer it to plaintiff.

9. **Please state the name and title or position with the United States Department Army of each person who has received complaints about Jerry DeLaCruz's work performance and whether that individual has taken any disciplinary action against Jerry DeLaCruz as the result of such complaints.**

Objection: Interrogatory is vague and overly broad.

--3--

ANSWER:   Defendant is not currently aware of any complaints about Mr. DeLaCruz's "work performance."

10.   Has the plaintiffs supervisor, Jerry DeLaCruz, been subject to discipline while he was an active or reserve member of the United States Army?   If the answer is affirmative, please state for such discipline:
(a) The date of discipline;

(b) Whether the discipline involved adverse treatment of female subordinate employees; and

(c) The discipline imposed upon Jerry DeLaCruz for his actions.

Objection:   The interrogatory requests information that does not tend to lead to admissible information.   In addition it is vague and overly broad.

11.   Please state the name, address and telephone number of each person who has personal knowledge of facts which support the defendant's Affirmative Defenses 1, 2, and 5 and for each witness please state the facts and which they have personal knowledge.

ANSWER:   As to Affirmative Defense 1: it does not appear plaintiff timely contacted an EEO counselor as to her non-selection claim.   Plaintiff and her EEO counselor would have knowledge of that.   As to Defenses 2 and 5: Mr. DeLaCruz would have knowledge as to the fact that he did not discriminate against plaintiff and that he had legitimate non-discriminatory reasons for the challenged decisions he made.

12.   Pursuant to Federal Rule of Civil Procedure 26, please state whether the defendant has retained expert witnesses and for each witness state:
(a)   The subject matter on which the witness will testify;
(b)   The conclusions and opinions of the witness and the bases therefore;
(c)   The qualifications of the witness; and
(d)   Any reports prepared by the witness about the case.

Objection:   This interrogatory seeks work product material.

ANSWER:   Notwithstanding the objection, Defendant states that it has not retained an expert witness at this time.   Further, Defendant will disclose the information sought in this interrogatory in the time and manner required by the Federal Rules of Civil Procedure and the Scheduling Order for this case.

**13.**    **Has the defendant, its agents or employees obtained statements from any of the persons disclosed in these answers to interrogatories?   If the answer is affirmative, please provide the name of the person from whom the statement was obtained, the date it was taken, and the name and address of each person present when the statement was obtained.**

Objection: This interrogatory seeks work product material.

ANSWER:   Further, all non-work product privileged statements have been provided in the Report of Investigation.

Respectfully submitted,

Defendant John McHugh

JAMES A. LEWIS
United States Attorney

By:    s/Gerard A. Brost
Gerard A. Brost IL Bar 3125997
Assistant United States Attorney
United States Attorney's Office
211 Fulton Street, Suite 400
Peoria, IL 61602
Telephone: (309) 671-7050
Email:   gerard.brost@usdoj.gov
Fax: (309) 671-7259

## CERTIFICATE OF SERVICE

I hereby certify that on June 18, 2013, I sent the foregoing Defendant's Responses to Plaintiff's First Set of Interrogatories via United States Mail, postage prepaid, to the plaintiff's attorney:

Stephen T. Fieweger
KATZ, HUNTOON & FIEWEGER, P.C.
1000 – 36th Avenue
Moline, Illinois 61265-7126

s/Kelly Thompson
Kelly Thompson, Paralegal



# IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
### ROCK ISLAND DIVISION

SHEILA LANGFELDT-ABBOTT,     )
                                      )
       Plaintiff,           )
                                      )
       v.                  )     Civil Case No. 12-4117
                                      )
JOHN McHUGH, Secretary,      )
Department of the Army,       )
                                      )
       Defendant.       )

## DEFENDANT'S RESPONSES TO PLAINTIFF'S
### FIRST REQUEST FOR PRODUCTION OF DOCUMENTS

**General Objection:** Plaintiff objects to each and every objection to the extent they request information protected under the attorney-client privilege or any other applicable privilege under law.

1. **Personnel records of Jerry DeLaCruz.**

Response:   Objection not tending to lead to admissible evidence and overly broad. Notwithstanding the foregoing objection, defendant will provide, subject to a protective order, the last four evaluations of Mr. DeLaCruz.

2. **Personnel records of Sheila Langfeldt-Abbott.**

Response: Objection, the burden of producing the documents is the same for both parties.   Defendant further states that plaintiff's personnel records are available to her online.   Defendant has included instructions for obtaining her OPF.

3. **Any and all emails, correspondence, text messages between Jerry DeLaCruz and supervisors or managers in the Department of Army concerning Sheila Langfeldt-Abbott.**

Response: Objection, overly broad as to time and subject matter.



EXHIBIT
F

4.     **Any and all emails, correspondence, text messages between Jerry DeLaCruz and supervisors or managers in the Department of Army concerning Laura Abney.**

Response: Objection, not tending to lead to admissible evidence and overly broad.

5.     **Any and all emails, correspondence, text messages between Jerry DeLaCruz and supervisors or managers in the Department of Army concerning Tim Gitchel.**

Response:   Objection, not tending to lead to admissible evidence and overly broad.

6.     **All documents which support the defendant's Affirmative Defense No.1.**

Response: All responsive documents have been produced in the Report of Investigation ("ROI").

7.     **All documents which support the defendant's Affirmative Defense No.2.**

Response: All responsive documents have been produced in the ROI.

8.     **All documents which support the defendant's Affirmative Defense No.4.**

Response: All responsive documents have been produced in the ROI.

9.     **All witness statements obtained by the defendant, its agents and employees.**

Response: Objection, work product privilege.   All non-privileged, responsive documents have been produced in the ROI.

10.    **All email communications between Department of the Army employees concerning complaints made by Sheila Langfeldt-Abbott concerning her supervisor Jerry DeLaCruz.**

Response: Objection not tending to lead to admissible evidence and overly broad. Further, the parties have the same access to the responsive documents. Notwithstanding the foregoing objection, defendant will produce all non-privileged, responsive emails.

11.    **All email communications, electronic communications, correspondence, and text messages between employees of the Army Sustainment Command at the**

United States Department of the Army's Rock Island Arsenal facilities concerning complaints regarding treatment of employees by Jerry DeLaCruz.

Response: Objection not tending to lead to admissible evidence and overly broad. Notwithstanding the foregoing objection, defendant will produce all non-privileged responsive documents relating to plaintiff's complaints.

12.   Each and every document that the defendant intends to use as an exhibit at trial.

Response: Objection, this interrogatory responds seek work-product privileged material. Defendant will produce an exhibit list as required under the Scheduling Order and the Federal Rules of Civil Procedure.

13.   All documents showing Jerry DeLaCruz's performance reviews from January 1, 2009 through the present date in his present position.

Response: Objection not tending to lead to admissible evidence and overly broad. Notwithstanding the foregoing objections, defendant will produce, subject to a protective order, all responsive documents.

14.   All of the plaintiff's annual performance reviews from January 1, 2000 through the present date.

Response: Objection, overly broad as to time.    Plaintiff's performance evaluations dating from 2007-2008 to present will be produced.

15.   Each and every document which supports the defendant's denial of paragraph 7 of the Complaint.

Response: All responsive documents have been produced in the ROI.

Investigation continues.

16.   All correspondence and electronic communications and reports from defendant's retained expert witnesses, including communications with counsel.

Response: Objection, this request seeks information protected by the work-product privilege.    Notwithstanding the foregoing objection, defendant states that no such responsive documents exist.

17. All written policies in effect with the defendant at the Army Sustainment Command from January 1, 2008 through the present date regarding discrimination in employment.

Response: All responsive documents will be produced.

18. All anti-harassment policies in effect at the defendant from January 1, 2008 through the present date.

Response: All responsive documents will be produced.

19. All electronic mail, correspondence and text messages between the commanding general for the Army Sustainment Command and subordinate employees concerning Jerry DeLaCruz's treatment of Sheila Langfeldt-Abbott, Laura Abney and any other female employees.

Response: Objection, this request is vague and overly broad. Notwithstanding the foregoing objection, defendant will produce all responsive non-privileged emails relating to plaintiff's complaints about Mr. DeLaCruz.

20. Each and every document which supports the defendant's claim that plaintiff was not subject to a hostile work environment by Jerry DeLaCruz on the basis of her age.

Response: All responsive documents have been produced in the ROI.

Investigation continues.

21. Each and every document which supports the defendant's claim that plaintiff was not subject to a hostile work environment by Jerry DeLaCruz on the basis of her sex.

Response: All responsive documents have been produced in the ROI.

Investigation continues.

22.     Copies of all NSPS rules and regulations in effect that allowed for non-competitive promotions during the January 1, 2010 through June 1, 2010 time period at the Army Sustainment Command, Rock Island Arsenal.

Response: All responsive documents will be produced.

Respectfully submitted,

Defendant John McHugh

JAMES A. LEWIS
United States Attorney

By:     s/Gerard A. Brost
        Gerard A. Brost IL Bar 3125997
        Assistant United States Attorney
        United States Attorney's Office
        211 Fulton Street, Suite 400
        Peoria, IL 61602
        Telephone: (309) 671-7050
        Email:   gerard.brost@usdoj.gov
        Fax: (309) 671-7259

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

SHEILA LANGFELDT-ABBOTT,           )
                                   )
        Plaintiff,                 )        Civil Case No. 12-4117
                                   )
        v.                         )
                                   )
JOHN McHUGH, Secretary,            )
Department of the Army,            )
                                   )
        Defendant.                 )

## CERTIFICATE OF SERVICE

I hereby certify that on June 19, 2013, I mailed documents Bates numbered DEF. RESP. PROD. REQ. 000001 - 000145 to Stephen T. Fieweger, Attorney, KATZ, HUNTOON & FIEWEGER, P.C., 1000 - 36th Avenue, Moline, Illinois, 61265-7126, via postage prepaid United States Mail.  Said documents are in response to Plaintiff's Request for Production of Documents.  I further certify that on June 19, 2013, I electronically filed this Certificate of Service with the Clerk of the Court using the CM/ECF system, which will send notification of the same to all parties of record.

                                   s/ Kelly Thompson
                                   Kelly Thompson, Paralegal

### Declaration Under Penalty of Perjury

I, Stephanie Bloom, in accordance with 28 U.S.C. Section 1746, make the following statement:

*EFFECTS OF NONDISCLOSURE: Military members and civilian employees of the Department of Defense (DoD) and its components and agencies are obligated to cooperate in official investigations and may be subjected to administrative action for failing to do so. If I am not a military member or civilian employee of DoD, the disclosure of information by me is voluntary; however, my failure to respond will result in a recommended disposition of the case on the basis of information available.*

*AUTHORITY: The authority to collect the information requested is derived from one or more of the following: Title 5, Code of Federal Regulations, Sections 5.2 and 5.3; Title 5, United States Code, Sections 1302, 1303, 1304, 3301, and 3302; Executive Order 11478, as amended; Executive Order 10577; and 29 CFR 1614.*

*PURPOSE AND USES: The information supplied will be used as a part of the record in an equal employment opportunity discrimination complaint. The record will be furnished to designees of agencies and departments of the Federal Government in order to resolve the complaint. The record may also be disclosed to any agency of the Federal Government having oversight or review authority with regard to Department of Defense, to Federal intelligence agencies, or to others as may be published in the Federal Register.*

In the Complaint of: Sheila Langfeldt-Abbott
Agency Docket Number: ARRIA10MAY01990

Claim under investigation:

*"Was the Complainant, Sheila Langfeldt-Abbott, discriminated against on the bases of sex (female) and age (age 43, DOB: July 29, 1966) in the following when she was subjected to a hostile work environment from late August 2009 to the present, consisting of: her supervisor screamed at her, refused to allow her to perform her duties, refused to speak to her, and used derogatory and condescending language toward her; and she was placed under the supervision of the G8 and not promoted to the Deputy Chief position upon the retirement of Cara Shay?"*

STATEMENT

1. State your full name.
A: Stephanie Fay Bloom

2. What is your current job title, grade, and series?
A: Staff Action Officer, GS-301-13

3. What is your current organization (directorate/department, division, location)?
A: Army Sustainment Command (ASC), AMSAS-RM, Building 390, 3rd floor, SE



EXHIBIT

*Page 1 of 9 Pages*
Declarant's Initials *ARL*

DEF 000174

4.  When did you begin your employment with this organization?
A:  14 Feb 10

5.  Who are your current first and second level supervisors?  Identify their job titles, grades, and the inclusive period when you were supervised by each?
A:  1st Level:  Ms. Rose Barnet, Acting Assistant Deputy Chief of Staff for Resource Management, GS-501-14, Supervisory Financial Management Specialist.  Supervised from 11 Apr 10 through today, 10 Dec 10.
     2nd Level:  Mr. Jerry De La Cruz, Deputy Chief of Staff for Resource Management, GS-501-15.  Supervised from 14 Feb 10 through today, 10 Dec 10.

6.  Were you in this same organization during the period at issue (August 2009 - August 2010) when the alleged incidents occurred?
A:  Not for entire period.  Reassignment from ASC, Command Assessment and Continuous Improvement Office to G8, Resource Management, AMSAS-RM, on 14 Feb 10.  Served in Resource Management from 14 Feb 10 through 31 Aug 10.

7.  If not, what organization were you working for during the period at issue?
A:  1 Aug 09 through 13 Feb10 assigned to ASC, Command Assessment and Continuous Improvement Office.  14 Feb 10 through 31 Aug 10 assigned to ASC, G8, Resource Management, AMSAS-RM.

8.  When did you begin your employment with that organization?
A:  Assigned to ASC, Command Assessment and Continuous Improvement Office on 15 Feb 09.

9.  What was your job title, grade and series at that organization?
A:  Process Improvement Specialist, GS-301-13.

10.  Who were your first and second level supervisors at the time of the alleged incidents?  State the inclusive period when you were supervised by each official?
A:  1st Level:  Mr. Timothy Karcher, supervised 15 Feb 09 through 14 Feb 10.
     2nd Level:  Mr. Jerry De La Cruz, supervised 15 Feb 09 through 14 Feb 10.

11.  Do you know Mr. DeLaCruz?
A:  Yes

12.  When did you first meet Mr. DeLaCruz?
A:  Approximately 25 years ago, 1985

13.  What was your organizational relationship to Mr. DeLaCruz at the time of the period at issue?
A:  I work directly for Mr. De La Cruz as his Staff Action Officer.

14.  Outside of work, did you socialize with Mr. DeLaCruz outside of work?
A:  No

DEF 000175

15. Do you know Ms. Langfeldt-Abbott?
A: Yes

16. When did you first meet Ms. Langfeldt-Abbott?
A: I did see Ms. Langfeldt-Abbott at various meetings when I worked in ASC Human Resource Directorate, Manpower Division but did not deal directly with her. Began dealing directly with her upon assignment to Resource Management in Feb 10.

17. What was your organizational relationship to Ms. Langfeldt-Abbott at the time of the period at issue?
A: As Staff Action Officer I deal directly with Division Chiefs, which Ms. Langfeldt-Abbott is, on resource management taskings, command updates and meeting notices/assignments.

18. Outside of work, did you socialize with Ms. Langfeldt-Abbott outside of work?
A: No

19. What is your:
A: Sex: Female
   Year of birth: 1956

20. Please describe briefly the duties of your position during the period at issue and at the time that the alleged incidents occurred.
A: Serve as Staff Action Officer and advisor to the Director and assist the Director in the day-to-day program activities and projects to accomplish organization mission. I provide direction, assistance, and support for all operations and activities under the authority of the directorate. I coordinate a variety of projects and taskings on behalf of the Director.

21. If the Investigator needs to contact you for additional information, please provide your email and phone number.
A: Stephanie.bloom@us.army.mil, 309-782-4425, DSN 793-4425.

Claim - Not Promoted to the Assistant Deputy Chief Position

The position at issue was the Assistant Deputy Chief of Staff, GS-0501-14 at Resource Management, HQ, U.S. Army Sustainment Command, the position occupied by Ms. Cara Shay before she retired in March/April 2010.

The position at issue was first announced to be filled on a Temporary Promotion/Reassignment basis on April 14, 2010. Mr. Jerry DeLaCruz, the ASC G8 Deputy Chief of Staff, initiated the action through the Human Resources.

22. Do you have any knowledge regarding the events leading to the selection to fill the position on a temporary basis?
A: I was not involved in that solicitation nor subsequent cancellation of that solicitation. I am aware that Mr. De La Cruz did have a discussion with Mr. Gitchel, Chief Integration and Requisition Management Division, Ms. Rose Barnet, Chief Financial Operations Division, and

DEF 000176

Ms. Sandra Canada, Chief, G8 Directorate of Logistics Enterprise Transformation Team, to see if there was interest in performing the Deputy duties. To my knowledge Mr. De La Cruz was contemplating the best fit for temporary Deputy duty performance based on workload and availability of Resource Management Division Chiefs

23. If so, please describe your knowledge.
A: I was not involved in solicitation actions for this position. I am aware that Mr. De La Cruz did have a discussion with Mr. Gitchel, Chief Integration and Requisition Management Division, Ms. Rose Barnet, Chief Financial Operations Division, and Ms. Sandra Canada, Chief, G8 Directorate of Logistics Enterprise Transformation Team, to see if there was interest in performing the Deputy duties. To my knowledge Mr. De La Cruz was contemplating the best fit for temporary Deputy duty performance based on workload and availability of Resource Management Division Chiefs

On June 7, 2010, an announcement was made to fill the position at issue on a permanent basis and was advertised to all ASC employees.

24. Do you have any knowledge regarding the events leading to the announcement/solicitation of candidates to fill the position at issue (Assistant Deputy Chief of Staff, GS-0501-14 at Resource Management) on a permanent, full time basis? If so, please describe your knowledge.
A: I was aware an announcement was issued but I was not involved in coordination of that announcement with G1, Human Resources Division. I was aware a selection panel had been named.

25. Were you interested and did you apply for the position at issue?
A: No

26. Who was the Selecting Official for the position at issue?
A: The Selecting Official is Mr. Jerry De La Cruz for any GS-14 position in Resource Management.

27. Do you have any knowledge whether the Complainant was interested in the Assistant Deputy position at issue? If so, please describe your knowledge.
A: No

28. The Complainant alleged that Mr. DeLaCruz offered the position to Mr. Timothy Gitchel, male, of RMO Division in March 2010. Mr. Gitchel declined the position.

Do you have any knowledge regarding this allegation/incident? Did Mr. DeLaCruz, in fact, offer the position to Mr. Gitchel that you are aware of? If so, explain fully.
A: I am not aware that Mr. De La Cruz offered the position to Mr. Gitchel as I was not present during that discussion. I am aware that Mr. De La Cruz did have a discussion with Mr. Gitchel Ms. Barnet and Ms. Sandra Canada to see if they were interested in performing the Deputy duties. To my knowledge Mr. De La Cruz was contemplating the best fit for temporary Deputy duty performance based on workload and availability of Resource Management Division Chiefs.

DEF 000177

29. Complainant alleged that Mr. DeLaCruz has treated older women differently than males or younger women.

Have you observed or witnessed Mr. DeLaCruz treat older women differently than males or younger women? If so, describe what you observed or witnessed.
A: No, I have never observed or witnessed Mr. De La Cruz treating anyone differently whether they are male or female, younger or older. All are treated respectfully and professionally. I have observed this first hand while working for Mr. De La Cruz. I am also copy furnished on many emails that Mr. De La Cruz answers to staff, division chiefs, other ASC organization personnel and outside of ASC. All emails contain professional, respectful correspondence/ dialogue/ information.

30. Do you have any knowledge as to the current status of the selection for the position at issue? If so, please describe your knowledge.
A: My current knowledge of status of selection is that the panel was selected, panel has met and interviewed candidates and submitted selection package to selecting official. I do not know panel's recommendation nor do I know selecting official's recommendation for selection to approving official.

31. The Complainant alleged that she should have been given consideration for selection to the position at issue because she is fully qualified to assume the position.

Do you believe the Complainant should have been considered for selection to the position at issue? If so, why?
A: I do not believe I am qualified to make that determination. I am not in a position that makes those decisions.

32. Do you believe the Complainant is fully qualified to assume the duties of the Assistant Deputy Chief position? If so, describe her qualifications.
A: Again, I am not in a position that makes qualification determinations nor reassignment determinations.

33. Do you believe that Mr. DeLaCruz discriminated against the Complainant when he offered the position to Mr. Gitchel but did not offer the Complainant the same consideration for the position at issue?
A: I am not aware that Mr. De La Cruz offered the position to Mr. Gitchel. I believe he discussed the Deputy position duties with Mr. Gitchel, Ms. Barnet and Ms. Canada but I am unaware that the position was offered to any of these individuals in those conversations.

34. Do you have any reason to believe that the Complainant was discriminated against on the bases of her sex and age when she was not promoted to the Assistant Deputy Chief position upon the retirement of Cara Shay?
A: No.

35. Do you have anything further to add to your testimony with regard to the position at issue?
A: No

*Page 5 of 9 Pages*
Declarant's Initials _____

**Claim - Hostile Work Environment Under Supervision of GR**

The Complainant alleged that, from late August 2009 to the present, Mr. DeLaCruz subjected her to a hostile work environment by screaming at her, refusing to allow her to perform her duties, refusing to speak with her, and using derogatory and condescending language toward her.

36. Do you have any firsthand knowledge regarding Complainant's allegations and did you witness these incidents of hostile work environment perpetuated by Mr. DeLaCruz toward the Complainant?
A: I have never observed or heard Mr. De La Cruz scream at Ms. Langfeldt-Abbott, nor anyone else. I have not observed that Mr. De La Cruz does not allow Mr. Langfeldt-Abbott to perform her duties, refuse to speak to her or use derogatory or condescending language toward her, nor anyone else. I have observed first hand verbal direction given to Ms. Langfeldt-Abbott on duties and direction for projects/assignments and they have all been professional. I have also been copy furnished on e-mails sent between Ms. Langfeldt-Abbott and Mr. De La Cruz and they have been professional and provide information/direction as required to complete project assignments.

37. If so, please describe your knowledge and/or what you witnessed.
A: I have not witnessed alleged hostile work environment.

38. Did you witness Mr. DeLaCruz scream at the Complainant at any time?
A: No, never.

39. If so, please describe what you witnessed.
A: N/A

40. Did you witness Mr. DeLaCruz use derogatory and condescending language toward Complainant at any time?
A: No, not at any time.

41. If so, please describe what you witnessed.
A: N/A

42. Have you observed Mr. DeLaCruz ever scream or use derogatory and condescending language to anyone else in the workplace?
A: No, I have not.

43. If so, describe what you witnessed and the individuals involved.
A: N/A

44. Have you observed Mr. DeLaCruz throw objects at Complainant and use demeaning statements toward her?
A: I have never seen nor heard any objects being thrown nor use of demeaning statements toward Ms. Langfeldt-Abbott nor anyone else.

DEF 000179

45. If so describe what you witnessed.
A: N/A

Complainant alleged that Mr. DeLaCruz has subjected her to hostile work environment by refusing to talk to her or to communicate with her therefore making it impossible for her to perform her daily duties.

46. Have you witnessed or observed Mr. DeLaCruz refuse to talk to Complainant or communicate with her? If so, describe what you witnessed.
A: No, just the opposite.
I have witnessed verbal communication between the two and also been copy furnished on email communication between them. I have observed first hand verbal direction given to Ms. Langfeldt-Abbott on duties and direction for projects/assignments and they have all been professional. I have been in meetings where both Ms. Langefeldt-Abbott and Mr. De La Cruz are present. At those meetings he may ask Ms. Langefeldt-Abbott for her input or to provide update/guidance to the field on a project she is working on. I have also been copy furnished on e-mails sent between Ms. Langefeldt-Abbott and Mr. De La Cruz and they have been professional and provide information/direction as required to complete project assignments. Examples of meetings I have attended with both present is S8/G8 synchronization teleconferences which all G8 division chiefs attend, Town Hall meetings which are attended by all present for duty G8 personnel, and AMC DCSRM VTCs which are attended by all G8 division chiefs.

47. Complainant alleged that Mr. DeLaCruz has not directed the same abusive treatment she has received from him toward younger females under 40 years of age or male employees.

Have you witnessed or observed Mr. DeLaCruz treat older women in an abusive manner than men or younger women?
A: No, never. He treats all people the same, with respect.

48. If so, please describe what you witnessed and give examples of such incidents.
A: N/A

49. Were you treated by Mr. DeLaCruz differently or more favorably than the Complainant because you are either a male or a younger female? If so, describe the circumstances.
A: No, I am older than Ms. Langfeldt-Abbott and I do not feel that I am treated differently than other male or female employees, favorably or unfavorably.

50. Did the Complainant complain to you, inform you, or make you aware that she felt harassed by Mr. DeLaCruz and that she was in a hostile work environment? If so, describe the circumstances.
A: No, Ms. Langfeldt-Abbott has never discussed her concerns of harassment nor hostile work environment with me.

51. Did you take any action such as report it to the authorities after she complained to you or made you aware of her concerns?

*Page 7 of 9 Pages*
Declarant's Initials ___

A: N/A

52.  Do you know if any management official became aware of the allegations of harassment and hostile behavior of Mr. DeLaCruz toward the Complainant?
A:  I am unaware of anyone who may have been aware of Ms. Langefeldt-Abbott's allegations.

53.  If so, who were these management officials?  Did they take any action that you are aware of?
A: N/A

54.  Describe the atmosphere in the workplace.  Do you feel that you were in a hostile work environment?  Describe.
A:  I do not feel I work in a hostile work environment.  The atmosphere in my immediate office is busy, but open for questions and we work as a team to resolve project issues or questions from other employees.  I coordinate tasks and answer questions from throughout the Resource Management directorate and talk to a large number of employees on a daily basis.  I have not been made aware of any hostile work environment and have a good working relationship with everyone.  Many employees have expressed to me how much they like working in Resource Management.  Resource Management employees ask for information/assistance from me on a daily basis and they would not do that if they felt intimidated to come into the Director's office area.

55.  If so, do you attribute the hostile work environment to the actions of Mr. DeLaCruz? Explain.
A:  N/A

56.  Is there an anti-harassment policy in your agency?  What is the policy?
A:  Yes, the ASC Commanding General has issued CG Policy 600-11, Sexual Assault and Sexual Harassment.

57.  Where can employees find this policy and how is this policy disseminated?  How did you become aware of the policy?
A:  This policy, as well as all CG policies, can be located at ASC SharePoint homepage.  I have been aware of all CG policies since becoming an ASC employee.  I also take mandatory EEO training where they discuss these policies.

58.  Did you receive any training on the anti-harassment policy?  If so, when was the last time you received training on this policy?
A:  I take annual mandatory EEO training.  I last took POSH training on 30 Sep 09 and NO FEAR training 31 Aug 09.  I have not yet completed current fiscal year required training which I have begun but not yet completed.

59.  Do you have any reason to believe that the Complainant was discriminated against and subjected to a hostile work environment because of her sex?
A: No

DEF 000181

60. Do you have any reason to believe that the Complainant was discriminated against and subjected to a hostile work environment because of her age?
A: No

61. Do you have anything further to add to your testimony?
A: I have observed Ms. Langefeldt-Abbott come into the Resource Management office and go directly into Mr. De La Cruz's office without appointment or notice to his Staff Support Specialist and slam the door to address him in private. This has occurred while he has been on the telephone.

### END OF STATEMENT

I, Stephanie Bloom, declare under penalty of perjury, that the foregoing is true and correct.

_____              _10 Dec 10_____
(Declarant's Signature)                                   (Date)

Page 9 of 9 Pages
Declarant's Initials _____

DEF 000182

**Stephen Fieweger**

| | |
|---|---|
| **From:** | Frooman, Hilary (USAILC) <Hilary.Frooman@usdoj.gov> |
| **Sent:** | Thursday, February 04, 2016 4:52 PM |
| **To:** | Stephen Fieweger |
| **Subject:** | FW: Defendant's Exhibits - Langfeldt Abbott |
| **Attachments:** | armys exhibits1.pdf |

Stacy sent you the exhibits today at 2:19 p.m.  I am going to provide them again now—or try to. I don't know if I can get them into a zip file This does not, I think, include the demonstrative exhibit, but it may be too many kb to go through anyway.

HILARY W. FROOMAN
ASSISTANT UNITED STATES ATTORNEY
CENTRAL DISTRICT OF ILLINOIS
318 S. 6ᵀᴴ STREET
SPRINGFIELD IL  62704
217-492-4411 (DIRECT LINE)
HiLARY.FROOMAN@USDOJ.GOV

---

**From:** Frooman, Hilary (USAILC)
**Sent:** Thursday, February 04, 2016 2:19 PM
**To:** Booth, Stacy (USAILC)
**Subject:** RE: Defendant's Exhibits - Langfeldt Abbott

Stacy, provide a copy of the demonstrative exb too,please

HILARY W. FROOMAN
ASSISTANT UNITED STATES ATTORNEY
CENTRAL DISTRICT OF ILLINOIS
318 S. 6ᵀᴴ STREET
SPRINGFIELD IL  62704
217-492-4411 (DIRECT LINE)
HiLARY.FROOMAN@USDOJ.GOV

---

**From:** Booth, Stacy (USAILC)
**Sent:** Thursday, February 04, 2016 1:07 PM
**To:** sfieweger@fiewegerlaw.com
**Cc:** Frooman, Hilary (USAILC)
**Subject:** Defendant's Exhibits - Langfeldt Abbott

Attached are Defendant's Exhibits sent to you in a Zip file.  If you need a password to open, it is 1234Langfeldt.



EXHIBIT
H

<< File: armys exhibits1.zip >>


*******************************************
**Stacy M. Booth, Paralegal Specialist**
**U.S. Attorney's Office**
**318 S. Sixth Street**
**Springfield, IL  62701**
**Email:  stacy.booth@usdoj.gov**
**Phone:  (217) 492-4450**
**Fax:  (217) 492-4888**

<< OLE Object: Picture (Device Independent Bitmap) >>

**Stephen Fieweger**

| | |
|---|---|
| **From:** | Stephen Fieweger |
| **Sent:** | Wednesday, February 03, 2016 2:45 PM |
| **To:** | 'Frooman, Hilary (USAILC)' |
| **Subject:** | RE: Langfeldt-Abbott  Exhibits and Touhy |

Hillary,

Could you simply scan and forward all your proposed exhibits so that I am not guessing on whether I have the correct DEF or ROI page?  I have had Cindy forward all my proposed exhibits to you.

Steve Fieweger

**From:** Frooman, Hilary (USAILC) [mailto:Hilary.Frooman@usdoj.gov]
**Sent:** Wednesday, February 03, 2016 2:00 PM
**To:** Stephen Fieweger
**Cc:** Kellogg, Steven M CIV USARMY ASC (US); Bryant, Holly K MAJ USARMY (US)
**Subject:** RE: Langfeldt-Abbott Exhibits and Touhy

Mr. Fieweger, I apologize for any confusion.  It took me awhile to recall what happened here and it was the result of my own initial confusion regarding the page numbering in the ROI and my lack of understanding of the ROI and how it fit into all this when I first took the case over from Jerry.

Here are the exhibits you mention and their ROI numbers; according to your Rule 26 initial  discovery, you provided the ROI to us, but in any case, both parties have the ROI.  I will ultimately update the exhibit list so it references these ROI numbers, but here they are to assist you:
Ex 18     ROI 301
Ex 19     ROI 302
Ex22     ROI 92
Ex 24     ROI 97
Ex 26     ROI 98
Ex 27    ROI 101
Ex 28    ROI 102
Ex  29  ROI 103-4
Ex  30  ROI 105-6
Ex  31  ROI 107
Ex 32  ROI 269-70
Ex  33  ROI 282
Ex 34  ROI 284
Ex 35  ROI 289
Ex 36  ROI  288
Ex  38  ROI  85
Ex.  39 ROI  84
Ex  40  ROI 81
Ex 41  ROI 88

Mr. Fieweger, with respect to Laura Abney, my understanding is that the Department of the Army has no objection to her appearing and testifying  in the Sheila Langfeldt-Abbott case, and the Army will not construct a Touhy barrier to her

testimony.  However, the process of her appearance is entirely up to you and we have no control over how she handles her current employer.  We have no authority to direct her current employer to let her off work.


HILARY W. FROOMAN
ASSISTANT UNITED STATES ATTORNEY
CENTRAL DISTRICT OF ILLINOIS
318 S. 6TH STREET
SPRINGFIELD IL  62704
217-492-4411 (DIRECT LINE)
HiLARY.FROOMAN@USDOJ.GOV

**From:** Stephen Fieweger [mailto:SFieweger@fiewegerlaw.com]
**Sent:** Wednesday, February 03, 2016 12:03 PM
**To:** Frooman, Hilary (USAILC); Booth, Stacy (USAILC)
**Subject:** Langfeldt-Abbott

Dear Hillary and Stacy,

In preparing my client's motion in limine I was trying to track your exhibits by virtue of the bates numbers you have assigned to them.  My review shows that I do not have pages 870 to 926.  Could you resend these pages, and provide me the date in which they were originally sent so that I may check my computer to see what happened to them.

Thank you,

Stephen T. Fieweger
Stephen T. Fieweger, P.C.
5157 Utica Ridge Road
Davenport, IA 52807
Telephone: 563-424-1982
Fax: 563-424-1983
Email: sfieweger@fiewegerlaw.com


CONFIDENTIALITY NOTE:
THIS E-MAIL TRANSMISSION AND ANY ATTACHMENTS HERETO CONTAIN INFORMATION FROM THE LAW FIRM OF STEPHEN T. FIEWEGER, P.C.; THIS INFORMATION IS CONFIEDNTIAL AND PRIVEILEGED.  THE INFORMATION IS INTENDED FOR THE SOLE USE OF THE INDIVIDUAL OR ENTITIY TO WHOM IT IS ADDRESSED.  IF YOU ARE NOT THE INTENDED RECIPIENT, YOUR USE, DISSEMINATION, FORWARDING, PRINTING, OR COPYING OF THIS INFORMATION IS PROHIBITED.  IF YOU HAVE RECEIVED THIS E-MAIL IN ERROR, PLEASE NOTIFY US BY TELEPHONE IMMEDIATELY SO THAT WE CAN ARRANGE FOR THE RETRIEVAL OF THEINFORMATION AT NO COST TO YOU.
Nothing in this message is intended to constitute an Electronic signature for purposes of the Uniform Electronic Transactions Act (UETA or the Electronic Signatures in Global and National Commerce Act ("E-Sign") unless a specific statement to the contrary is included in this message.

**Stephen Fieweger**

| | |
|---|---|
| **From:** | Frooman, Hilary (USAILC) <Hilary.Frooman@usdoj.gov> |
| **Sent:** | Thursday, February 04, 2016 4:52 PM |
| **To:** | Stephen Fieweger |
| **Subject:** | FW: Exhibit 58 |
| **Attachments:** | ex 58.pdf |

Here is the demonstrative exhibit.      I may have to go find an IT person to help with the zip file.

HILARY W. FROOMAN
ASSISTANT UNITED STATES ATTORNEY
CENTRAL DISTRICT OF ILLINOIS
318 S. 6ᵀᴴ STREET
SPRINGFIELD IL  62704
217-492-4411 (DIRECT LINE)
HiLARY.FROOMAN@USDOJ.GOV

**From:** Booth, Stacy (USAILC)
**Sent:** Thursday, February 04, 2016 2:43 PM
**To:** Holly.k.bryant4.mil@mail.mil; Kellogg, Steven M CIV USARMY ASC (US) <steven.m.kellogg.civ@mail.mil>
(steven.m.kellogg.civ@mail.mil)
**Cc:** Frooman, Hilary (USAILC)
**Subject:** FW: Exhibit 58

FYI.

**From:** Booth, Stacy (USAILC)
**Sent:** Thursday, February 04, 2016 2:43 PM
**To:** sfieweger@fiewegerlaw.com
**Cc:** Frooman, Hilary (USAILC)
**Subject:** Exhibit 58

Exhibit 58 is attached. The only exhibit remaining is Exhibit 57 (certified copy of admin report of investigation), but Hilary said you should already have that.

*******************************************
Stacy M. Booth, Paralegal Specialist
U.S. Attorney's Office
318 S. Sixth Street
Springfield, IL  62701
Email: stacy.booth@usdoj.gov
Phone: (217) 492-4450
Fax: (217) 492-4888

1


EXHIBIT



# INVESTIGATOR'S DECLARATION

I, Pete Evangelista, EEO Complaints Investigator, Investigations and Resolutions Division, Arlington, Virginia, assigned to investigate the complaint of Sheila Langfeldt-Abbott, Agency Docket Number: ARRIA10MAY01990, in accordance with 28 U.S.C. Section 1746, declare the following:

- Substantial Delay in the Investigation. Due to non-availability of Complainant's attorney representative on the dates scheduled for investigation, the investigation was delayed from October 19-21, 2010 to November 29-December 1, 2010 (IF pp 714-717).

- The amendments to the complaint were received from the EEO Complaints Manager on January 20, 2011 (IF p 693).

- The last documents were received by the Investigator from the Complainant's attorney on April 13, 2011. The documents were the Complainant's statements regarding the two amended claims and her rebuttal to statements made by management officials (IF pp 699-700).

- The Complaints Manager, Mr. Gerry Handy, preferred to conduct the investigation of the amended claims via the interrogatory method (IF p 694).

- Witness Selections. The following are lists of witnesses that were accepted to testify on behalf of the agency and the Complainant. Those indicated with "FFC" provided their testimonies in person during the onsite Fact-Finding Conference. Their testimonies are located in the transcripts. The remaining witnesses provided testimony through individually signed Declaration Under Penalty of Perjury. Due to time constraints, not all witnesses were accommodated to provide testimony during the FFC (IF pp 682-688):

| Agency's witnesses: | Complainant's witnesses: |
|---|---|
| Jerry DeLaCruz (FFC) | Sheila Langfeldt-Abbott (FFC) |
| Jim Coffman (FFC) | Timothy Gitchel (FFC) |
| Rosalie Barnett (FFC) | Jennifer Schou (FFC) |
| D. Scott Welker | Troy Allen |
| MG Yves Fontaine | Sonya Tawney |
| Timothy Fleming | Ellen Christiansen |
| Linda Rielly | Cara Schay |
| Stephanie Bloom | Laura Abney |
| Ruth Sharfe | Kim Poling |
| Ann Fennelly (Human Resources) | Troy Allen |
| *Sandra Canada (see Note) | Ashley Essex |
|  | Judith Leffler |
|  | *Diana Balmer (see Note) |
|  | *Annie Erickson (see Note) |



EXHIBIT

\*Note:  These witnesses failed to provide testimony.  Sandra Canada and Annie Erickson failed to provide their testimony in spite of follow-up efforts to obtain them (IF pp 690, 719-720).  Diana Balmer did not wish to participate in the investigation (IF p 718).

- Two Similar Complaints Were Investigated During the Fact Finding Conference.  The Laura Abney case, Docket Number ARRIA10MAY01994, was investigated on the same schedule with this case, the Sheila Langfeldt-Abbott case, Docket Number ARRIA10MAY01990 during the onsite Fact-Finding Conference from November 29 to December 1, 2010.  Both Complainants retained the same attorney, Mr. Steven Fieweger.  Both claims were identical; were filed against the same Responsible Management Official; and have the same witnesses. The investigator initially asked for three business days for each case to be investigated if he were to travel onsite.  Their attorney could not accommodate six days but could only accommodate three days.  Both investigations were accomplished in three days (November 29-December 1, 2010) and interviews were conducted separately in each case.  Two separate Reports of Investigations and two separate transcripts were prepared (IF pp 714-717).

- Facilitation Conference.  On November 29, 2010, a Facilitation Conference was held pertaining to the subject complaint.  In addition to the Investigator, participants in the conference were:

  Sheila Langfeldt-Abbott, Complainant
  Steve Fieweger, Esquire, Complainant's Representative
  Steven Kellogg, Agency Representative

  The facilitation conference lasted 15 minutes.  At the conclusion of the facilitation a resolution was not reached.

- The following witnesses were selected to provide testimony; however, they testified that they have no firsthand knowledge of the issues contained in the claims accepted for investigation. Therefore, their testimonies were not included in the Report of Investigation but their signed declarations are included in the investigative file:

  Timothy Flemming (IF pp 523-530);
  Sonya Tawney (IF pp 542-549);
  Linda Rielly (IF pp 560-567);
  Ruth Sharfe (IF pp 579-586).

### END OF STATEMENT

I, Pete Evangelista, declare under penalty of perjury, that the foregoing is true and correct.

Signature:  _Pete Evangelista_ _____        Date:  __April 29, 2011__

E-FILED
Monday, 18 March, 2013  02:25:22 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

SHEILA LANGFELDT-ABBOTT,                )
                                        )
Plaintiff,                              )
                                        )
v.                                      )        Civil Case No. 12-4117
                                        )
JOHN McHUGH, SECRETARY,                 )
DEPARTMENT OF THE ARMY,                 )
                                        )
Defendant.                              )

### DEFENDANT'S ANSWER TO PLAINTIFF'S COMPLAINT

The Defendant, John McHugh, Secretary of the Army ("Defendant"), by and

through his attorney, Gerard A. Brost, Assistant United States Attorney for the Central

District of Illinois, hereby responds to and answers plaintiff's complaint as follows:

### COMMON ALLEGATIONS

1.  Plaintiff Sheila Langfeldt-Abbott (hereinafter referred to as "Sheila") is a resident of

Davenport, Scott County, Iowa, and at all times material herein has been employed by the

United States Department of Army specifically located at the Rock Island Arsenal and

within the United States Army Sustainment Command.

**Response:**

 Plaintiff's residency is admitted upon information and belief. The remainder of

Paragraph 1 is admitted.

2. That John McHugh is presently the Secretary of the Department of Army.

1



EXHIBIT
K

**Response:**

Admit.

3. That Sheila presently holds the position of G8 Deputy Chief of Staff for Resource

Management for United States Army Sustainment Command.

**Response:**

Deny.  Plaintiff is the Assistant Deputy Chief of Staff for Resource Management, G8.

4. That her direct supervisor is the Chief of Staff for Resource Management of the G8, Jerry

DeLaCruz.

**Response:**

Deny.  Mr. DeLaCruz is the Deputy Chief of Staff for Resource Management, G8.

5.  That Sheila is a female over the age of 40 with more than 24 years of exceptional service

as a federal employee.

**Response:**

Defendant admits that plaintiff is over the age of 40 based upon information and belief.

The remainder of Paragraph 5 contains argument to which no answer is required.

6. That this court has subject matter jurisdiction over this complaint and the parties

pursuant to 28 U.S.C. § 1331 and pursuant to 42 U.S.C. § 2000e, *et seq.* and 29 U.S.C. § 623,

*et seq.*

**Response:**

Admit.

7. That Sheila at all times material to this cause of action performed her duties as a federal

employee in an exemplary manner.

**Response:**

  Deny.

8. That beginning in August 2009 the defendant assigned as the Deputy Director of the G8

of the Army Sustainment Command, Jerry DeLaCruz, who became Sheila's direct

supervisor.

**Response:**

  Paragraph 8 is denied as stated. Defendant further states that Mr. DeLaCruz was

assigned as the Deputy Chief of Staff for Resource Management in August, 2009, G8, and

that he became the supervisor of plaintiff.

9. That thereafter from August 2009 through the present date, DeLaCruz screamed, yelled,

berated, criticized and created a hostile work environment for Sheila as well as the other

older women over the age of 40 under his command.

**Response:**

  Deny.

10. That beginning in March 2010, Sheila as well as others began to complain to

supervisors of Mr. DeLaCruz concerning the discriminatory treatment and hostile work

environment that Sheila and other older women were subjected to by Mr. DeLaCruz.

**Response:**

  Deny.

11. That despite such reports, defendant by its supervisor, DeLaCruz, continued to subject

Sheila to the same conduct creating a hostile work environment on the basis of her age

and sex.

3

**Response:**

Deny.

## COUNT I – SEX DISCRIMINATION IN
## EMPLOYMENT FAILURE TO PROMOTE

1 – 11. Plaintiff repeats and realleges paragraphs 1 through 11 of the Common Allegations

as paragraphs 1 through 11 herein.

**Response:**

Defendant repeats and reaffirms all prior responses to Paragraphs 1-11.

12. That at the end of March 2010, the assistant to the Deputy Director of the G8, Cara

Shay, retired.

**Response:**

Admit that Cara Schay retired in March 2010. The remainder of Paragraph 12 [Count I] is

denied.

13. That the defendant through Jerry DeLaCruz, offered a permanent promotion to the

Assistant Deputy Director of the G8 to Timothy Gitchel, a male employee who was under

the age of 40 and who had less education training and experience than Sheila. Mr. Gitchel

turned down the promotion telling DeLaCruz that Sheila was the most qualified

candidate for the promotion.

**Response:**

Deny.

14. That when Tim Gitchel turned down the non-competitive permanent promotion that

was permitted under existing federal employment regulations at that time, DeLaCruz

continued to discriminate against Sheila on the basis of her ex when he refused to make an

offer of permanent employment to Sheila in March of 2010.

**Response:**

Deny.

15. That Sheila was the most qualified candidate for the position in that subsequently in December 2010 after the position had been competitively bid, Sheila was found to be the most qualified candidate and was subsequently promoted to the Assistant Deputy Director for the G8.

**Response:**

Paragraph 15 [Count I] is denied as stated. Defendant further states that plaintiff was selected for the position of Assistant Deputy Chief of Staff for Resource Management, G8.

16. That as a direct and proximate result of defendant's acts of sex discrimination, Sheila has lost back wages including the 5% pay increase that was available to and was offered to Timothy Gitchel by Jerry DeLaCruz, she has sustained severe emotional distress and is entitled to recover her attorneys' fees and expert witness' fees.

**Response:**

Deny.

WHEREFORE, plaintiff Sheila Langfeldt-Abbott hereby requests this Court enter a judgment in her favor and against the defendant John McHugh, Secretary Department of the Army, in an amount equal to her loss in back pay, front pay, compensatory damages, and recovery of her costs, including reasonable attorneys' fees and expert witness' fees.

**Response:**

Defendant denies the allegations in this paragraph and states that Plaintiff is not entitled to judgment in her favor, damages, a pay increase, back pay, front pay, compensatory

damages, or recovery of costs, including reasonable attorneys' fees and expert witness' fees.

## COUNT II – AGE DISCRIMINATION
## IN EMPLOYMENT FAILURE TO PROMOTE

1 – 11. Plaintiff repeats and realleges paragraphs 1 through 11 of the Common Allegations as paragraphs 1 through 11 herein.

**Response:**

Defendant repeats and reaffirms all prior responses to Paragraphs 1-11.

12. That Sheila is a member of a protected class in that she is a female over the age of 40.

**Response:**

Admit plaintiff is a female upon information and belief. Admit plaintiff is over 40. The rest of this paragraph contains conclusions of law to which no response is required.

13. That at the end of March 2010, the assistant to the Deputy Director of the G8, Cara Shay, retired.

**Response:**

Admit that Cara Schay retired in March 1010. The remainder of Paragraph 13 [Count II] is denied.

14. That the defendant through Jerry DeLaCruz, offered a permanent promotion to the Assistant Deputy Director of the G8 to Timothy Gitchel, a male employee who was under the age of 40 and who had less education training and experience than Sheila.

**Response:**

Deny.

15. That when Tim Gitchel turned down the non-competitive permanent promotion that was permitted under existing federal employment regulations at that time, DeLaCruz

6

continued to discriminate against Sheila on the basis of her sex when he refused to make

an offer of permanent employment to Sheila in March of 2010.

**Response:**

Deny

16. That Sheila was the most qualified candidate for the position in that subsequently in

December 2010 after the position had been competitively bid, Sheila was found to be the

most qualified candidate and was subsequently promoted to the Assistant Deputy

Director for the G8.

**Response:**

Paragraph 16 [Count II] is denied as stated. Defendant further states that plaintiff was

selected for the position of Assistant Deputy Chief of Staff for Resource Management, G8.

17. That as a direct and proximate result of defendant's acts of age discrimination, Sheila

has lost back wages including the 5% pay increase that was available to and was offered to

Timothy Gitchel by Jerry DeLaCruz, she has sustained severe emotional distress and is

entitled to recover her attorneys' fees and expert witness' fees.

**Response:**

Deny.

18. That defendant's actions were intentional, thereby entitling plaintiff to recover

liquidated damages equal to her lost back pay.

**Response:**

Deny.

WHEREFORE, plaintiff Sheila Langfeldt-Abbott hereby requests this Court enter a

judgment in her favor and against the defendant John McHugh, Secretary Department of

the Army, in an amount equal to her loss in back pay, front pay, compensatory damages,

and recovery of her costs, including reasonable attorneys' fees and expert witness' fees.

**Response:** Defendant denies the allegations in this paragraph and states that Plaintiff is

not entitled to judgment in her favor, a pay increase, back pay, front pay, compensatory

damages, or recovery of costs, including reasonable attorney's fees and expert witness

fees.

**COUNT III – SEXUAL DISCRIMINATION
HOSTILE WORK ENVIRONMENT
42 U.S.C. § 2000e, *et seq.***

1 – 11. Plaintiff repeats and realleges paragraphs 1 through 11 of the Common Allegations

as paragraphs 1 through 11 herein.

**Response:**

 Defendant repeats and reaffirms all prior responses to Paragraphs 1-11.

12. That the defendant, through its supervisor, Jerry DeLaCruz, has on a daily and weekly

basis, created a hostile working environment because of plaintiff's sex in that he has

berated her, taken assignments away from her, ridiculed her in front of subordinate staff,

has screamed and yelled at her, backed her into a corner and threated her, has thrown

objects during meetings in anger, thereby creating a hostile working environment for the

Sheila.

**Response:**

 Deny.

13. As a direct and proximate result of one or more of the foregoing hostile acts of the

defendant's supervisor, DeLaCruz, Sheila has sustained damages equal to severe

emotional distress, has had significant embarrassment, and humiliation as the result of the

8

acts, has lost sleep, sought medical treatment for conditions developing, including

aggravation of her heart, all to her damages in an amount equal to $300,000.00, or an

amount determined by the trier of the fact.

**Response:**

Deny.

14. That Sheila is also entitled to recover her costs including reasonable attorneys' fees and

expert witness' fees incurred.

**Response:**

Deny.

WHEREFORE, plaintiff Sheila Langfeldt-Abbott hereby requests this Court enter a

judgment in her favor and against the defendant John McHugh, Secretary Department of

the Army, in an amount equal to her loss in back pay, front pay, compensatory damages,

and recovery of her costs, including reasonable attorneys' fees and expert witness' fees.

**Response:**

Defendant denies the allegations in this paragraph and states that Plaintiff is not entitled

to judgment in her favor, damages, a pay increase, back pay, front pay, compensatory

damages, or recovery of costs, including reasonable attorney's fees and expert witness

fees.

WHEREFORE, defendant requests this Court to dismiss plaintiff's complaint, to

enter judgment in favor of defendant, and against the plaintiff, to award to defendants its

costs of litigation including attorneys' fees, and for any other or further relief this Court

deems appropriate.

## AFFIRMATIVE AND OTHER DEFENSES

The defendant further asserts the following defenses:

1. Plaintiff has not timely exhausted her administrative remedies.

2. The Army had legitimate, non-discriminatory reasons for all of its actions.

3. Plaintiff's complaint fails to state a claim upon which relief can be granted.

4. Plaintiff was not subjected to unequal or discriminatory terms and/or conditions of employment by the Army.

5. To the extent that plaintiff demonstrates that a discriminatory motive played a part in the challenged actions, which the Army denies, the Army asserts that the same actions would have been taken absent discriminatory or retaliatory motive.

6. Any damages sought by plaintiff must not exceed the limits imposed by 42 U.S.C. § 1981a(b)(3).

7. The Army reserves the right to raise any and all affirmative defenses available under Federal Rule of Civil Procedure 8(c).

Respectfully submitted:

Defendant John McHugh

JAMES A. LEWIS
United States Attorney

By:      s/ Gerard A. Brost
         Gerard A. Brost, IL Bar No. 3125997
         Assistant United States Attorney
         One Technology Plaza
         211 Fulton Street, Suite 400
         Peoria, Illinois 61602
         Phone: 309/793-7050
         Email: gerard.brost@usdoj.gov

10

## CERTIFICATE OF SERVICE

I hereby certify that on March 18, 2013, counsel for the Defendant electronically filed the foregoing Defendant's Answer to Plaintiff's Complaint with the Clerk of the Court using the CM/ECF system which will send notice of said filing to all parties of record.

Dated: <u>March 18, 2013</u>                                     <u>s/ Kelly Thompson</u>
                                                        Kelly Thompson, Paralegal