UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| SHEILA LANGFELDT-ABBOTT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )     Case No.  12-4117 |
| | ) |
| MARK T. ESPER, SECRETARY, | ) |
| DEPARTMENT OF ARMY, | ) |
| | ) |
| Defendant. | ) |

**DEFENDANT'S OBJECTIONS TO PLAINTIFF'S EXHIBITS**

The Defendant objects to the Joint Exhibit List filed as Doc. 131-1 (See

Attachment A) for the following reasons:

First, every document that Defendant ever provided in discovery to Plaintiff

contained a bates stamp number on the page (identified as DEF or DEF DISC).  Plaintiff

chose, however, not to use any document numbering system on her discovery

documents nor has Plaintiff provided a cross-referencing system.  As a result, the

Defendant is left confused.

Second, a Joint Exhibit List should contain "joint" exhibits that are to be admitted

into evidence, utilized by both Plaintiff and Defendant, that are exactly the same

exhibit.  The Defendant recognizes the Court's intention that if both parties intend to

put the same document into evidence, it makes no sense to have the same document

bear two different exhibit numbers.  Yet, the Defendant cannot profess any knowledge

regarding how Plaintiff determined the "joint" exhibits that were listed on the Joint Exhibit List (See Attachment A).

Third, the Joint Exhibit List filed by Plaintiff only contained 12 total "joint" exhibits, and the Defendant is uncertain whether this Joint Exhibit List should have included more or fewer exhibits.

Fourth, Plaintiff has numbered exhibits in Plaintiff's Exhibit List which differs from the Joint Exhibit List. For example, see Exhibit 4 listed in Attachment A (Joint Exhibit List) and Exhibit 4 in Attachment B (Plaintiff's Exhibit List – page 12 of 96).

Due to the extreme confusion, the Defendant proposes that both parties each put together an exhibit notebook for the other party and for the Court.

Defendant is confident currently that its objections extend to Joint Exhibits 5, 7, 8, 9, and 12, but is uncertain whether Defendant's objections extend to other exhibits on the Attachment A – the Joint Exhibit List. Many emails in this case often appear as strings of emails and include non-admissible emails as part of the string. For example, as Joint Exhibit 5, Plaintiff lists "Emails of Judith Leffler, Rich Sanders and Troy Allen— 1/4/11," but the Defendant is uncertain as to which specific emails in the string of emails are included.

Defendant also objects to many of the Plaintiff's exhibits because they are self-serving hearsay. *Farris v. Sturner*, 264 F.2d 537, 539 (10th Cir. 1959) (a person cannot "make evidence for himself by writing a letter containing the statements he wishes to prove.") Whether a letter or an email, the determination remains the same: the Plaintiff cannot make evidence by emailing her evidentiary statements and then seek to put

those emails into evidence.   The same holds true for a Declaration when the witness is available or even if the witness is unavailable.  The opposing party has had no opportunity to cross-examine the declarant. Unless the declarant seeks only to establish the authenticity of a document, the declaration is inadmissible and self-serving.  For this reason, the Defendant objects to Plaintiff's Exhibits 6, 7, 8, 9, 38, 39, 40, 41, 44, 45, 46, and 47, as Plaintiff can have such person testify in person at trial. Further, the declarations seek to establish the ultimate issues in the case and seek to establish the Plaintiff's right to compensatory damages by means of a layperson's observations of Plaintiff's physical condition.

Even if a layperson witness sought to testify to observations of Plaintiff's physical condition and relate that condition to Plaintiff's employment, the evidence would be inadmissible. A layperson cannot provide a medical opinion, such as the Plaintiff's nervous condition or depressed state and relate that condition to employment.  A medical expert might possibly have offered such an opinion, but a layperson cannot establish a factual basis under Federal Rule of Evidence 702 for any conclusion that Plaintiff's alleged physical difficulties resulted from work-related experiences.

**Emails as Self-Serving Hearsay**

While the Defendant objects to some of the following exhibits for a variety of reasons, which are contained in the Plaintiff's Exhibit List (Attachment C), the following documents are nothing more than self-serving in the manner described in *Farris,*

3

whether written by Plaintiff herself or written by her associates, who could easily have relied on information provided by Plaintiff:

>    Plaintiff's Exhibit 26:  4/8/10 email of Sheila Langfeldt-Abbott to Jim Coffman;

>    Plaintiff's Exhibit 49: Abney email to Mayer dated 6/25/13;

>    Plaintiff's Exhibit 56: March 30, 2013 email from Abbott to B.G. Brian Layer;

>    Plaintiff's Exhibit 57: Email from Gitchel to McQuiston dated 6/25/13;

>    Plaintiff's Exhibit 60: Roxanne Gatewoods 7/8/13 email to Plaintiff; and

>    Exhibit 66: Connie Buckroyd Email to Plaintiff's Counsel which references DeLaCruz as "epitome of evil."

In addition to the self-serving emails noted above, Defendant also objects to:

**Plaintiff's Exhibit 10 – Compensatory Damages – Lorraine Jestel**

Lorraine Jestel is a physician.  As explained in more detail in Defendant's Motion in Limine, Plaintiff failed to provide medical information to the Defendant in discovery despite being asked to do so.  As such information was not provided in discovery, the Defendant objects to its use as a trial exhibit.

**Plaintiff's Exhibit 42 - Summary of Lost Income Due to Lack of 5% Pay Increase**

Plaintiff's Exhibit 42 is inadmissible for several reasons:  1) it goes to lost back pay, an issue which is not for the jury to decide, 2) it is not self-explanatory and requires a member of the G1 personnel section to explain its meaning; 3) the letter which asserts a 5% loss of back pay is a letter from Mr. Fieweger to the EEO and sets forth the Plaintiff's damages.  An attorney cannot both present evidence and represent a client in the same case.  Admission of Mr. Fieweiger's letter would be the same as allowing

4

Plaintiff's counsel to testify and present his personal opinion while representing his

client.  Moreover, Mr. Fieweger is not a member of the G1 personnel section so he does

not have the technical knowledge necessary to discuss the 5% pay increase and

determine when it applied.

**Plaintiff's Exhibit 43 - Cara Shay Email of March 2010 and DeLaCruz Email of March 29, 2010**

Plaintiff's Exhibit 43, an email dated March 29-30, 2010, is irrelevant to any

allegations in this case.  The email suggests that Jerry DeLaCruz was being reassigned

for a special project.  However, whether that did or did not occur does not make

relevant in this proceeding.  This case should remain focused on the Plaintiff's

allegations of discrimination and not wander into the professional history of various

witnesses.

**Plaintiff's Exhibit 48 - U.S. Army Inspector General Agency Report of Investigation of Jerry DeLaCruz dated 7/3/06**

The Defendant reviews Exhibit 48 in detail in its Motion in Limine.

**Plaintiff's Exhibit 52 - May 31 Emails of K. Szymanski to Lofreddo and Welker**

Defendant reviews Exhibit 52 more closely in its Motion in Limine.  However,

Plaintiff's Exhibit 52 is clearly Attorney-client privilege and is not admissible as

evidence in this lawsuit.

**Plaintiff's Exhibit 53 –Notice of Personnel Action dated 7/28/13**

Defendant previously objected to page 2 of Exhibit 52 (DEF 3083). Defendant

withdraws this objection.

**Plaintiff's Exhibit 54 - Email from Sonya Tawney to A. Bassler dated 8/7/13**

The Defendant objects to the relevance of Plaintiff's Exhibit 54. The content of the email between Tawney and Bassler is that "Cheryl" concurs with the move and goes on to state that should Ms. Abbott return to the G8, she would likely be repositioned. While Plaintiff asserts that she was moved from the G8 due to retaliation, her complaint does not involve "Cheryl," who was moved to Plaintiff's previous position of Deputy G8. "Cheryl" was not responsible for the move and Plaintiff has made no allegations against her.

**Plaintiff's Exhibit 56 - March 30, 2012 email from Sheila Langfeldt-Abbott to B.G. Brian Layer (See Attached)**

In addition to being self-serving hearsay, Defendant objects to the following two lines at the top of the first page of the email sent by Plaintiff, which was not fully and is still legible: "we know-use taxpayer money to bring the leadership guy in for personal interviews to build a case that Jerry is ok." Defendant objects to these lines being included in this document as highly prejudicial, especially when taken out of context as they have been in this document.

**Plaintiff's Exhibit 57 - Email Gitchel to McQuistion dated 6/25/13 (See Attached)**

In addition to other objections, the final page of this Exhibit 57 offers an opinion on the ultimate issue in the case. An email written by both Laura Abney and Tim Gitchel begins with the statement:

> ...just found out and that the Command has decided to move
> our Deputy, Ms. Sheila Abbott from the G8. I believe this is

all happening because she had the courage to call out and
question the abusive behavior of Jerry DeLaCruz.

Even an expert is not allowed to provide an opinion on the ultimate issue except
in limited and unusual circumstances.  Almost every email the Plaintiff provides and to
which the Defendant has objected provides an opinion on the ultimate issue. The
Defendant objects to these emails for this and other previously stated reasons.

### Plaintiff's Exhibit 58 - June 25, 2013 Email Exchanges between Plaintiff and Colonel Donald Mayer (See Attached)

The first page of Exhibit 58 is a plea by Plaintiff to work directly for Colonel
Mayer.  Mayer responds with the statement, he will "sleep on it."  Page 2 continues in
the same vein and Colonel Mayer again responds: "I will take your points below into
consideration."   Mayer then explains why he thinks that Plaintiff will do well in the
logistical branch.

It is unlikely that Plaintiff can properly lay the foundation for this exhibit.  It is
primarily self-serving complaints about being moved to a new position.  However,
another witness may be able to lay the foundation but only as to pages 1 and 2.  Pages 3
through 7 are entirely self-serving complaints produced by the Plaintiff herself.  They
are entirely inadmissible as set forth in *Farris, supra.*  Moreover, Defendant objects to
pages 3-7 of Exhibit 58, as within the diatribe is an almost word-for-word rendition of
Count IV of her complaint.  For the Plaintiff, it is mere self-serving hearsay.

### Exhibit 59 - Inspector General Report dated 7/20/12, Welker

Defendant discusses the reasons for refusing this exhibit in its Motion in Limine.

**Exhibit 61 - Email between Plaintiff and Lofreddo dated 4/25-5/8, 2013**

The Defendant explains in more detail in its Motion in Limine why documents and communications between Plaintiff and Lofreddo are irrelevant to the claims in this case. Should the Court allow evidence relating to Colonel Lofreddo, Exhibit 61 would nevertheless be inadmissible. This first part of the exhibit shows that the Plaintiff forwarded an email to her attorney, Mr. Fieweger. That information has no possible evidentiary value to this case. Further, this exhibit also contains an email dated May 8, 2013 from Plaintiff to Colonel Lofreddo with the following language:

> Was also thinking that if the G5 staff principle position, at the GS-15 level, doesn't work out as I describe below, I think the G1 staff principle position at the GS-15 level would be a great fit for me too.

Plaintiff's allegation with respect to Count IV, Retaliation, in her complaint is that she was moved from the G8 and placed in a different position by Scott Welker when Colonel Mayer was in charge. Plaintiff's discussions with Colonel Lofreddo about which positions she desired as a GS-15 are not relevant. Plaintiff claims demotion and not a failure to promote.

**Exhibit 62 – Email between Colonel Akers and Sheila Langfeldt-Abbott dated 11/5/2012**

With respect to the lower portion page 1 of Exhibit 62, the Defendant has no objection, provided appropriate foundation is laid. The Defendant objects to the upper portion of page 1, which asks Candy Akers to "pray for her." It is irrelevant and a self-serving attempt to gain sympathy.

As to page 2 of Exhibit 62, the Defendant has no objection to the portion of the email dated November 1, 2012 from DeLaCruz to Plaintiff, Laura Abney, Tim Gitchel, Tim Fleming, Lisa Peer, Stephanie Bloom and Judy Leffler related to "G8 Office Management Procedures" but objects to page 2 as irrelevant and of which does not need to be included.

### Exhibit 63 - March 7 and 8, 2013 Email Exchanges between Kellogg and Fieweiger

In its Motion in Limine, Defendant has discussed in detail the reasons Exhibit 63 should not be admitted.

### Plaintiff's Exhibit 65 - Joseph Schultz concerning Sheila Langfeldt-Abbott's Work Duties (See Attached)

Defendant objects to Plaintiff's Exhibit 65 because it provides minimal information regarding Plaintiff's work duties but provides a substantial amount of self-serving commentary.

### Exhibit 67 - Sheila Langfeldt-Abbott's 2017 Performance Appraisal - Evaluation Report

Plaintiff's Exhibit 67 is inadmissible as it is outside the scope of the allegations in her complaint. Exhibit 67 is an 2017 appraisal of Plaintiff's work performed outside of the Rock Island Arsenal after she applied for and obtained a position in Indianapolis. This case is not about the Plaintiff's abilities in Indianapolis. Plaintiff's performance reviews from Rock Island supervisors establish she was an effective worker. However, supervisor opinions of her work once she is no longer employed at the Rock Island

Arsenal fail to make any allegation in the complaint more or less likely to be true and the exhibit is simply irrelevant.

### Exhibit 68 - Manning Document Showing G-5 Director Position Vacant as a GS-15 Position

Plaintiff's Exhibit 68 is irrelevant to any allegation in the complaint. Further, it is not an official document and it is privileged, as it was included as a part of attorney settlement communications (See Exhibit 63). The Plaintiff has alleged that she was moved to Logistics as a GS-14. She claims this was in retaliation for her previous EEO complaints. She does not allege that in 2013 she applied for a GS-15 and was denied the position.

Apparently, at some point Plaintiff's counsel sought an agreement with Arsenal counsel and asked that Plaintiff be moved to the G-5. An argument then ensued about whether the position in question should be a GS-14 or a GS-15 and as part of the argument, Plaintiff's counsel argued that the position in question had been a GS-15 in the past. This argument is irrelevant to the claims in the complaint, as it was part of attorney negotiations. Further, it is a quite complex issue which will take substantial time to explain to the jury if the Plaintiff is allowed to present it. Yet, whether the G-5 position was a GS-14 or a GS-15 fails to prove any fact with respect to the allegations in the complaint on file.

Respectfully submitted,

John E. Childress
United States Attorney


s/ Hilary W. Frooman
HILARY W. FROOMAN, Reg # 6180241
Attorney for the Defendant
United States Attorney's Office
318 S. Sixth Street
Springfield, Illinois 62701
Telephone:  217-492-4450
Fax:  217-492-4888
hilary.frooman@usdoj.gov


s/ Holly K.S. Bryant
HOLLY K.S. BRYANT, Reg #48139
Attorney for the Defendant
U.S. Army Litigation Division
9275 Gunston Road, 3rd Floor
Fort Belvoir, VA  22060
Telephone:  703-693-0357
holly.k.bryant4.mil@mail.mil

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 22, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Stephen Fieweger

s/Hilary W. Frooman
HILARY W. FROOMAN, Reg. #6180241